Tufts *vs.* Little.

Winslow, trustee, moved to set aside said judgment, because the declaration did not set forth the trust property, because the judgment did not conform to the declaration, and because the execution was not in accord with the declaration and judgment. The motion was overruled, and he excepted.

Winslow & Branham, by W. S. Wallace, for plaintiff in error.

W. E. Collier, by brief, for defendants.

---

Orrie Tufts, plaintiff in error, *vs.* William Little, administrator, defendant in error.

When the vendor of lands puts the vendee in possession thereof under a bond for titles, and the vendee has remained in possession some four years, enjoying the rents, issues and profits thereof without having paid anything either on principal or interest of the purchase money, and the premises, by reason of no repairs and bad cultivation, are daily deteriorating in value, so as to have become insufficient to pay the debt due thereon, and the vendee has become insolvent and gone into voluntary bankruptcy, and the vendor applies to a court of equity for an injunction against further waste of the land and use of the profits, and also for a receiver to take charge of the same and preserve the rents, issues and profits to abide the final hearing: *Held*, that there is equity in the bill, and that this court will not control the discretion of the court below in granting the injunction and appointing a receiver.

Injunction.   Receiver.   Vendor and purchaser.   Before Judge BARTLETT.   Jones county.   At Chambers.   January 22, 1876.

Reported in the opinion.

BLOUNT, SIMMONS & HARDEMAN, by Z. D. HARRISON, for plaintiff in error.

HALL, LOFTON & BARTLETT, for defendant.

JACKSON, Judge.

The intestate of Little sold certain lands to Tufts, and put him in possession, and gave him bond for titles thereto.   He paid nothing therefor, either of principal or interest, but had been in possession four years, using the rents, issues and profits of the lands; had become insolvent and gone into bankruptcy on his own petition, and was totally unable to respond for damages or rent in ejectment, or to pay the money due on a suit for the purchase money; he had alleged falsely and fraudulently to the bankrupt court that the title was in him, and had a homestead assigned him there in said lands; the lands had greatly deteriorated in value by reason of non-repairs and unskilful cultivation, and would not pay one half the debt of $1,880 90, purchase money, without the application of the rents for that purpose.   The complainant alleged the foregoing facts, substantially, and afterwards, by amendment, added that another tract was embraced in the said note for the purchase money; that she, the intestate, gave her bond for titles for that also; that it has deteriorated in value, and is not now worth half the price agreed upon, for the same reasons of unskilful cultivation and want of repair; that defendant has used this tract of land in the same way; that he was solvent when the trade was made, but has become insolvent since that time.

The defendant, in his answer, set up that some of the consideration of the note was money loaned him, and only the

value of one of the tracts of land; that set up in the amendment was in the note for $1,880 90; that the consideration was *that land* and money loaned to him; that, as security for the note, he executed title to the lands first set out in the bill, and she, the intestate, gave him bond for titles when the note was paid; that this was 27th December, 1871.    He admitted that he had paid no part of the purchase money, also, his insolvency and bankruptcy, but denied false representations to the bankrupt court.    An affidavit of one Hurt was read by the complainant, to the effect that the lands had deteriorated by the bad management of the vendee, and were not worth the principal and interest of the debt.    The defendant admitted the use of the rents, issues and profits.

The bill prayed for an injunction to restrain the defendant from renting or using the lands, and for the appointment of a receiver to hold them and preserve the rents, issues and profits thereof until the hearing.

The court granted the injunction and appointed the receiver, and this is the error assigned.

The bill and answer are at variance only in respect to a part of the land, which part, the defendant contends, he sold to the intestate of complainant for money loaned, and took her bond for titles thereto on payment of that amount.    As to the other part it is admitted that complainant's intestate sold it to the defendant.    It does not matter, materially, inasmuch as the the transaction occurred subsequently to the act of 1871 : Code, sections 1969, 1970, and by the terms of that act conveyed the title, if the deed was made under it to secure a loan : *Carswell vs. Hartridge*, 55 *Georgia*, 412.    If the deed was not made under that, the transaction would constitute an equitable mortgage, and the equities of the parties would probably be the same.    At any rate this court will not control the discretion of the chancellor in settling controverted facts, unless greatly abused.    So that the question presented by this record is this : Where vendor sold lands to vendee and gave bond for titles, and put vendee in possession, and by unskilful cultivation or otherwise, while in possession of the vendee, the lands deterio-

-rate in value so that they will not pay the debt, and the ven-
dee has paid nothing, and though solvent at the time of the
trade, has become insolvent and is bankrupt will a court of
equity enjoin such vendee from using the rents, issues and
profits of the lands and put them in the hands of a receiver
to be preserved for the final decree in the case? We are not
aware that the precise question thus made has been ruled by
this court. Questions, analagous, however, have been adjudi-
cated here. In *Collier vs. Sapp,* 49 *Georgia Reports,* 93, it
was held that where plaintiff sues for balance of purchase
money, and under the relief act of 1868, the jury return the
land to him and require him to pay $3,553 27 to defendant,
and the defendant brought the case to this court, and got a
*supersedeas,* and then withdrew the writ of error, and re-
mained in possession, and received large rents and profits, and
plaintiff had paid taxes to prevent sale of the land, and de-
fendant had it levied on by execution, and plaintiff offered to
pay the verdict after deducting rents and profits, it was ruled
that the court should enjoin the defendant from proceeding
with the execution, and appoint a receiver to take charge of
the lands and preserve the rents, issues and profits until the
final trial of the case. The principle decided in that case
would seem to cover this. The case of *Walker et al. vs. Zorn,*
50 *Georgia Reports,* 371, decides that equity will not impound
cotton and corn made on lands claimed by complainant pend-
ing an ejectment, and restrain their sale by the defendant, *the
crops being already made and gathered;* but the court says,
"the prayer is not that the land shall be put in the hands of a
receiver and rented in the interest of both, but that certain corn
and cotton, the property of defendant, shall be impounded,"
thereby implying that had the prayer been to put the land in
the hands of a receiver to preserve future rents and issues to
abide the suit, it would have been granted. The case of *Jordan
vs. Beall et al.,* 51 *Georgia Reports,* 600, rules that relief in
such a case as this, the vendee being in possession under bond
for titles, will not be granted by the appointment of a receiver,
*it not appearing that the vendee became insolvent after making*

*the purchase.* The court, TRIPPE, judge, delivering the opinion, seems to put the case upon the ground that Beall was insolvent when he bought from Jordan, and that Jordan knew it. Here the allegation is distinct, and not denied, that Tufts was solvent at the time of the trade and had gone into bankruptcy and become utterly insolvent since. In Edwards on Receivers, page 51, a case in 5 Paige, 38, is cited to the effect that a receiver of rents and profits ought not to be appointed when the mortgage is not wholly due, and when the mortgagee has neglected to take a pledge of the rents and profits of the whole premises to keep down the accruing interest in the meantime; but that if the whole mortgage debt were due, and the premises were not of sufficient value to pay the debt and costs, then the court might consider the complainants in equity as immediately entitled to the whole estate pledged as a security for such debt and costs and appoint a receiver of the rents and profits in anticipation of a decree, at any time after the filing of complainants' bill. In the case here all the money is due; the complainant's title is better than a mortgage in respect to part of the land; he is the vendor and has given bond for titles to convey; in respect to the balance, by the act of 1871, he holds the absolute title until his debt is paid, taking for true defendant's own theory of the facts; or if the transaction was not under the act of 1871, he is an equitable mortgagee. In any view the case is stronger than that cited by Edwards as to the greater part of the land involved, and as strong in respect to the rest of it. We think, therefore, that authority, to a considerable extent, will sanction the decision of the court below, and sound reason and natural equity abundantly sustain it. The vendee of lands is in possession under only a bond for titles; he is unskilfully using them, and does not repair; they are deteriorating every day in value, so that they will not pay half the principal and interest due thereon; he has become insolvent, has gone into bankruptcy, and had a homestead set apart; has enjoyed the profits four years and has not paid a cent of principal or interest; if sued in ejectment he will hold the vendor at bay for

years to enjoy more rents and profits; if sued on the notes the same will be the result; the vendor asks a court of equity to stop such iniquitous conduct, irremediable in any other court, and to preserve the lands and their fruits to await the final verdict of a jury on the facts, and the decree of the court thereon. The justice of the prayer seems to us apparent from a mere recital of the facts, and we affirm the judgment of the chancellor in granting the relief by injunction, and in the appointment of the receiver.

Judgment affirmed.