## COOLEY *v.* MOSS, and *vice versa.*

1. If an owner of land enters into a contract which is legally binding, whereby he agrees to sell a certain described lot to another for a named price, but that he shall not make the deed until he shall have sold a certain other lot or lots, if before selling such other lots he sells and disposes of the lot covered by the contract, and thus puts it beyond his power to make a deed to the other party, this constitutes a breach of the contract, which will authorize an immediate suit against him, without waiting for him to sell the other lots, and without requiring a tender of the purchase-money to him by the other party to the contract.

2. Where one agrees to sell land to another at a given price, and that he will make a deed when he shall have sold certain other lots, and where the other person does not agree to buy or to pay the consideration named, and there are no mutual obligations, and no other consideration appears, the contract is unilateral and does not bind the owner of the land, and he may withdraw from it or repudiate it.

3. Where mutual promises are relied on as a consideration to support a contract, the obligations of the contract must be mutually binding upon the respective parties. If one assumes under such an agreement to do a special act beneficial to another, and that other, under the terms of the contract, is under no obligation to perform any act of advantage to the former, the agreement is without such consideration as will support the promise of the party assuming to perform.

Argued June 23, — Decided August 3, 1905.

Action for breach of contract.    Before Judge Reid.    City court of Atlanta.    October 22, 1904.

Cooley brought an action against Moss, laying his damages in the sum of $500, and alleging that on April 28, 1903, the defendant entered into the following agreement with the plaintiff: "This agreement made this day between A. J. Moss and J. L. Cooley.    A. J. Moss agrees to sell the said Cooley the N. W. cor-

ner of Glenwood ave. and Broyles street, fronting 40 ft. on Glenwood and back 140 ft. on Broyles st.; the said Moss is to·make deed to said Cooley upon his paying $300 for said lot, but it is understood that said Moss is not to make deed until he has sold the lot adjoining or the two western lots of the block. Whenever he makes sales as above specified, he then will close the trade with said Cooley." Signed by each party. The defendant fails and refuses to comply with this agreement, and has sold the lot described in it, and disposed of it to some other person than the plaintiff, and has put it beyond his power to make a deed to the plaintiff and to comply with the contract. Plaintiff has been ready, able, and willing to take and pay for the land, and is now ready, able, and willing to do so, but has not done so on account of the failure of the defendant. The defendant demurred on the following grounds: First, because the petition sets forth no cause of action; second, because it shows no consideration for the contract alleged to have been entered into between the parties; third, because it does not show that the defendant has sold the lot adjoining, or the two western lots of the block referred to in the agreement, and until the selling of the adjoining lot, or the two western lots, no right of action exists, or can exist in the plaintiff. The court overruled the first and second grounds of the demurrer, but sustained the third ground, and dismissed the action. The plaintiff filed a bill of exceptions, and the defendant a cross-bill.

C. D. *Maddox*, for plaintiff.

*DuBignon & Alston*, for defendant.

LUMPKIN, J. (After stating the facts.) 1. The main bill of exceptions makes a single question: If the contract be treated as valid and binding on Moss, does the declaration allege a breach, giving an immediate right of action? It has been said that " A breach of contract may arise in any one of three ways, namely: by renunciation of liability under the contract; by failure to perform the engagement; or by doing something which renders performance impossible." 7 Am. & Eng. Enc. L. (2d ed.) 149–150. If an agreement is made that one shall convey land to another, and if the former conveys it to a third person, and thus puts it out of his power to comply with his·contract, the latter may sue him without waiting for the contract time to elapse, and without demanding a conveyance. Bishop on Contracts, § 1430. In

Newcomb v. Brackett, 16 Mass. 161, it was said: "A., for a valuable consideration, promises to convey land to B., as soon as B. should pay to A. a certain sum of money; A. conveys the land to a stranger; and it was held that B. was presently entitled to his action, without payment or tender of the money." In Heard v. Bowers, 23 Pick. 455, this doctrine was pursued even to the extent of holding that "Where a party stipulates to convey an estate to another at a future day, and in the meantime conveys it to a third person, he is guilty of a breach of his stipulation; and although he should repurchase the estate before the day named, he could not compel the other party to take the land and perform the contract on his part; but this rule does not apply to the case of an involuntary disability of a party to perform his stipulations, which he may remove previous to the time appointed for their performance." See also Hopkins v. Young, 11 Mass. 302; Lovell v. St. Louis Ins. Co., 111 U. S. 264; Poirier v. Gravel, 88 Cal. 79; 1 Addison on Contracts (3d Am. ed.), 40; Shaffner v. Killian, 7 Ill. App. 620; Howard v. Daly, 61 N. Y. 362; Gray v. Green, 16 Hun, 334; *Smith* v. *Ga. Loan Co.*, 113 *Ga.* 975. One or two of the cases cited, including the last, arose on a renunciation by one party of a continuing contract consisting of mutual stipulations. Voluntarily to place it beyond one's power to comply with a contract constitutes a breach quite like the other breach arising from renunciation. As to what is sometimes called an "anticipatory breach" arising from the renunciation of a contract of the character referred to, and the right to bring an action at once upon the occurrence of such a breach, or to treat the contract as still binding and wait until the time for performance arrives, the authorities have not always been in perfect harmony; but this court has followed the line of authority resting upon the leading case of Hochster v. De la Tour, 2 El. & Bl. 678, and Roehm v. Horst, 178 U. S. 1. The trial judge erred in sustaining the third ground of the demurrer.

In the brief for defendant in error it is said that the declaration does not set out the time when this sale occurred, nor the time when Cooley took advantage of it, so as to show whether he acted promptly; but no such point was made in the demurrer.

2, 3. The cross-bill of exceptions assigns error in overruling the other two grounds of the demurrer. An examination of the

contract sued on will show that Moss agreed to sell to Cooley a certain lot, and to make him a deed upon his paying $300, "but it is understood that said Moss is not to make deed until he has sold the lot adjoining or the two western lots of the block. Whenever he makes sales as above specified, he then will close the trade with said Cooley." Cooley made no agreement or promise to do anything, nor was any consideration stated in the contract. Inasmuch as a valuable consideration is one of the essentials of a valid contract, it follows that in an action upon it the burden of proof is upon the plaintiff to show a consideration; and where the instrument sued on is a simple contract, and is not itself sufficient to show a consideration, it is incumbent on the plaintiff to allege and prove that there was one. 6 Am. & Eng. Enc. L. (2d ed.) 763; 4 Enc. Pl. & Pr. 928. Certain instruments import a consideration, and the production of such an instrument alone furnishes prima facie evidence of a consideration, and casts upon the defendant the burden of proving want or failure of it. Such bills and notes as under the law merchant import a consideration would be an illustration of this class of instruments. Sealed instruments import a consideration. At common law the presumption of a consideration for specialties was conclusive. In some of the United States all contracts made in writing and signed by the party to be charged thereby are declared by statute to import a consideration. 6 Am. & Eng. Enc. L. (2d ed.) 762, 763; *Rowland* v. *Harris*, 56 *Ga.* 141. Except in instances of this character, however, the rule above announced applies. In *Morrow* v. *Southern Express Co.*, 101 *Ga.* 810, it was said: "Where mutual promises are relied upon as a consideration to support a contract, the obligations of the contract must be mutually binding upon the respective parties; and if one assume under such an agreement to do a special act beneficial to another, and that other under the terms of the contract is under no obligation to perform any act of corresponding advantage to the former, the agreement is without such consideration as will support the promise of the party assuming to perform." See also *McCaw Manufacturing Co.* v. *Felder*, 115 *Ga.* 408; *Harrison* v. *Wilson Lumber Co.*, 119 *Ga.* 6; *Huggins* v. *Southeastern Lime* Co., 121 *Ga.* 311; *Swindell* v. *First National Bank*, 121 *Ga.* 714; *Swan Oil Co.* v. *Linder*, 123 *Ga.* 550; 7 Am. & Eng. Enc. L. (2d ed.)

114.    A decision in regard to an option to purchase real estate will be found in Frank v. Stratford-Handcock Co. (Wyo.), 67 L. R. A. 571.    It is true that the instrument sued on begins with the words, "This agreement made this day between A. J. Moss and J. L. Cooley," and is signed by both parties.    But Cooley nowhere agrees or promises to do any act or binds himself in any way.    He does not agree to take the lot, or to pay the purchase-price.    Suppose that Cooley had announced that he was unwilling to take the lot, there is no promise or agreement on his part contained in the paper on which Moss could have brought an action; nor does any agreement on his part at any time appear.    It was in the nature of an agreement between the two by which Cooley was to have an option or right to buy the lot and Moss was to sell it to him at a certain price.    Moss agreed that when he had sold certain other lots "he then will close the trade with said Cooley."    But there is no agreement that Cooley will then close the trade with Moss.    Nor is there any other promise or agreement on Cooley's part which would furnish a consideration for the agreement of Moss.    Mutual agreements or promises may furnish a consideration one for the other; but where one party does all the promising and agreeing, the mere fact that the other signs his name to the paper is not sufficient to constitute an agreement on his part.    The instrument construed in *Harrison* v. *Wilson Lumber Co.*, supra, was very similar in these respects to the one now under consideration.    It began with the words, "This agreement made in triplicate, and entered into this February 13th, 1902, between Harrison & Garrett, of Forsyth County, Ga., parties of the first part, and the Wilson Lumber Co., Ltd., of Toronto, Ontario, parties of the second part."    It then stated that Harrison & Garrett agreed to furnish a sawmill and cut to the order of the Wilson Lumber Company, and to edge and trim in a good workmanlike manner, as called for by the lumber market, such logs to be furnished to the mill desirable to the Wilson Lumber Company, at different places in Dawson and Pickens counties, for which Harrison & Garrett were to receive for such services $2.50 per thousand feet board measure for all lumber so sawed and accepted by the Wilson Lumber Company.    Lumber improperly manufactured should be at the loss of Harrison & Garrett, who were to run out all lumber on trucks at no expense to the Wilson

Lumber Company, when the amount of such cut was 30,000 feet or more; and the contract was to remain in force until such timber "as will have been bought by the parties of the second part is cut, unless mutually agreed upon by both parties hereto." Each of the parties signed this instrument. But it was held to be unilateral.

The fact of bringing this suit for damages can not be considered as an acceptance and agreement on the part of the plaintiff, if for no other reason, because it shows on its face that the defendant had abandoned the contract or violated it and rendered compliance impossible before the declaration was filed. It could not amount to the closing of a contract alleged to have already been rendered impossible of performance by the defendant. This does not conflict with the ruling in *Black* v. *Maddox*, 104 *Ga.* 157, or that in *Sivell* v. *Hogan*, 119 *Ga.* 167. We are of opinion, therefore, that the trial judge erred in not sustaining the demurrer on the first and second grounds. He correctly dismissed the case, though we can not agree with him as to the reason for so doing. In *Wellmaker* v. *Wheatley*, 123 *Ga.* 201, there were mutual promises to furnish a consideration.

*Judgment reversed on both bills of exceptions. All the Justices concur, except Simmons, C. J., absent.*