## SIMPSON & HARPER *v.* SANDERS & JENKINS.

1. A executed to B an instrument under seal, which recites that for and in consideration of the sum of one dollar, the receipt of which is acknowledged, A "hereby sells [to B] his entire shingle output" between the first of March, 1905, and the first of March, 1906, local wagon trade excepted, at a stated price per thousand. B did not agree to purchase the shingles nor to assume any obligation in respect thereto. *Held,* that, inasmuch as the writing was not mutually binding upon both parties, this was not a contract of sale, but was merely an offer or proposal to sell.

2. It appearing, however, that the offer or agreement to sell was based upon a valuable consideration, it amounted to an option binding the promisor to make the proposed sale if accepted by the promisee, and was irrevocable until the expiration of the time agreed upon by the parties during which the offer was to remain open; and if acceptance were made within such time, it would complete the contract.

Argued July 1, 1907.—Decided February 26, 1908.
Rehearing denied February 29, 1908.

Complaint. Before Judge Spence. Calhoun superior court. December 5, 1906.

This case arose upon the issues made by a petition filed by Simpson & Harper, plaintiffs, against Sanders & Jenkins, as a partnership and as individuals, defendants, and demurrers filed by said defendants. The petition contains two counts, the first of which alleges, in substance, the following facts: Petitioners are wholesale dealers in shingles and lumber, and defendants are manufacturers of shingles. On February 23, 1905, the defendants executed and delivered to petitioners the following instrument: "This agreement entered into this the 23rd day of Feby., 1905, between Sanders & Jenkins, of the county of Calhoun, Ga., of the first part, and Simpson & Harper, of the county of Fulton, State of Georgia, party of the second part, witnesseth: The consideration of this agreement is as follows: one dollar ($1.00) cash in hand this day paid, the receipt of which is hereby acknowledged by the party of the first part, and the faithful performance of the agreement hereinafter specified, and which is hereby made a part of this contract. Said

party of the first part hereby sells their entire shingle output from March 1st to September 1st, for No. 1s at $2.00; and March 1st to October 1st, for No. 2s at 75 cents. Beginning September 1st for No. 1s, and October 1st for No. 2s, until March 1st, 1906, No. 1 shingles at $2.25, No. 2 shingles at $1.00, f. o. b. cars Edison, Ga. . . No shingles to be sold to any one else other than Simpson & Harper, local wagon trade excepted. [Signed] Sanders & Jenkins (L. S.), per R. L. Jenkins (L. S.)." By a subsequent amendment "petitioners allege that the prices mentioned in the contract are for shingles by the thousand, . . and that both they and the defendants well understood, at the time said contract was entered into, that such was the meaning thereof." And "by virtue of the provisions of said agreement, and for and upon the consideration therein expressed, and the acceptance by plaintiffs of said contract and the entering by plaintiffs upon the execution thereof upon their part, and plaintiffs continuing to execute the same, the defendants sold to your petitioners exclusively, and petitioners became bound to pay therefor, the entire shingle output of defendants for the period and at the prices stated in said agreement, said agreement extending from the first day of March, 1905, to the first day of March, 1906." Petitioners faithfully performed at all times the obligations resting upon them under said agreement, and in pursuance thereof did take from the defendants, and pay the defendants therefor at the prices named in said agreement, shingles delivered to petitioners by defendants under said agreement, during the months of March, April, May, June, July, and August, 1905. In the month of September defendants removed their shingle mill from Edison to Carnegie, "a distance of a few miles." And on October 3, defendants wrote to petitioners a letter, stating that, "After looking over our contract, we feel that we have complied with it as far as it holds us. While at Edison we gave you the entire mill cut, and we feel that the contract does not hold us at our new location." And since that date, defendants have refused to deliver to petitioners any shingles under said agreement. Petitioners charge that the shingle output of defendants' mill, local wagon trade excepted, from October 3, 1905, to March 1, 1906, was 812,500 No. 1 shingles per month, and 437,-500 No. 2 shingles per month. The petition alleges specifically the amount of "the excess of the market price of No. 1 [and No. 2] shingles, F. O. B. cars at Edison [during the months of October,

November, and December, 1905, and January and February, 1906] over the price of No. 1 [and No. 2] shingles stated in said contract." And petitioners allege that they are entitled to recover from the defendants "the excess of such market price over the price stated in said agreement for said months for the amount of the entire shingle output of defendants, local wagon trade excepted." The second count of the petition alleges, that "under and by virtue of said writing, and for and upon the consideration therein expressed, the defendants gave to your petitioners the option and exclusive right to take from defendants the entire shingle output of defendants, local wagon trade excepted, from March 1st, 1905, to March 1st, 1906, at the prices named in said writing. ·Your petitioners, acting under and by virtue of said agreement, exercised their said option and took from the defendants their entire shingle output, local wagon trade excepted, for the period extending from the 1st day of March, 1905, to the 1st day of October, 1905, paying to defendants therefor the prices stated in said agreement. · . . Petitioners have been at all times during said period from March 1st, 1905, to March 1st, 1906, ready, willing, and able to take and pay for the entire shingle output of defendants, local wagon trade excepted, at the prices stated in said agreement, and have so notified defendants; but, in violation of their agreement, the defendants on and from October 3rd, 1905, have refused to deliver to your petitioners the entire shingle output of defendants, local wagon trade excepted, or any part thereof." Wherefore petitioners allege that they have been injured and damaged as set out in the first count. The defendants demurred generally and specially to the allegations of the petition. The court sustained the general demurrer and dismissed the petition. The plaintiffs excepted.

*Peeples & Jordan,* for plaintiffs.

*Pottle & Glessner,* for defendants.

BECK, J. (After stating the facts.) 1. Considered as a contract of purchase and sale, the instrument set forth in the statement of facts, and signed by the defendants in error, was unilateral and wanting in mutuality. By the terms of that instrument the defendants agreed to sell to the plaintiffs the entire shingle output, with certain specified exceptions, of their mills located at a designated point. The instrument, as we have seen, was signed only by the defendants. Under its terms no promise was made nor ob-

ligation entered into by the plaintiffs. If the plaintiffs had not seen fit to give an order for the output of the defendants' mill, the defendants could not, by tendering or shipping shingles to the plaintiffs, have compelled the latter to either take or pay for them. A promise by the plaintiffs to take the contemplated output of the defendants' mill, if made at the time of the execution of the instrument referred to, would have been a good consideration for the promise or undertaking of the defendants; but no such promise or undertaking was made or entered into by the plaintiffs. In *Morrow* v. *Southern Express Co.,* 101 *Ga.* 810 (28 S. E. 998), it was said: "Where mutual promises are relied upon as a consideration to support a contract, the obligations of the contract must be mutually binding upon the respective parties; and if one assume under such an agreement to do a special act beneficial to another, and that other under the terms of the contract is under no obligation to perform any act of corresponding advantage to the former, the agreement is without such consideration as will support the promise of the party assuming to perform." See also *Cooley* v. *Moss,* 123 *Ga.* 707 (51 S. E. 625), and cases there cited; Broom's Common Law (9th ed.), 300.

That a promise by one, with nothing in return, is void, is axiomatic. Bishop on Contracts (2d ed.), 35. Difficulty has been found, however, in the application of this axiomatic, elementary principle in certain cases, because of the peculiar facts of the cases which either took or seemed to take the peculiar case from out the operation of the rule. But in the present case, so far as it is sought to have the instrument under consideration declared a valid and binding contract of purchase and sale, there are no facts to prevent the application of the rule. If Simpson & Harper, who are now seeking to enforce the alleged contract, had for any reason seen fit to decline to order shingles manufactured at the defendants' mill, the defendants could not have compelled them to receive and pay for the shingles, for the very simple reason that they had never agreed or promised to do so.

2. But while we are clear that the instrument can not be upheld as a binding contract of bargain and sale, because of its lack of mutuality, and that therefore the court was right in sustaining the general demurrer to the first count of the petition, we are of the opinion that the second count, which declared upon the contract as

an option given for a valid consideration, set forth a cause of action and was not open to attack by general demurrer. Disregarding the form of the instrument and considering it in the light of all of its provisions, the instrument vests the plaintiffs with certain rights, inchoate at the time of the signing of the instrument, but which might accrue and did accrue upon the doing of certain things by them. Inasmuch as this contract under seal, and made in consideration of the sum of one dollar, binds the signer to sell but imposes no counter-obligation to buy upon the contemplated purchasers, it amounted to no more than an offer or proposal of sale. In the case of *Black* v. *Maddox,* 104 *Ga.,* 157 (30 S. E. 723), it was said: "By section 3645 of the Civil Code the law governing such contracts is laid down in the following terms: 'The consent of the parties being essential to a contract, until each has assented to all the terms, the contract is incomplete; until assented to, each party may withdraw his bid or proposition, unless a given time is agreed on in which the other party may assent.' It would thus seem to be our law, that where a period of time is given in which the proposition may be accepted, such proposition can not be withdrawn before the expiration of such time. The principle upon which continuing offers ripened into a contract, by acceptance before withdrawal, proved of great benefit in commercial transactions, but was in part unsatisfactory to the individual receiving the offer, by reason of its liability to be withdrawn at a time when it was of most value to him, and the inconvenience thus felt gave rise to an endeavor to prevent withdrawal and at the same time leave the party to whom the offer was made free to accept or reject the same. 21 L. R. A. note on page 128. This purpose was accomplished by procuring from the proposed vendor an obligation binding him to make a contract of sale. It is just as competent for a man to bind himself to make a contract of sale as it is for him to bind himself by a contract of sale. DeReutte *v.* Muldrow, 16 Cal. 505. The obligation by which one binds himself to sell, and leaves it discretionary with the other party to buy, is what is termed in law an option, which is simply a contract by which the owner of property agrees with another person that he shall have a right to buy the property at a fixed price within a certain time. Ide *v.* Leiser, 10 Mont. 5 [24 Pac. 695, 24 Am. St. R. 17]. In such contract two elements exist: first, the offer to sell, which does not become a contract until

accepted; second, the completed contract to leave the offer open for the specified time. These elements are wholly independent and can not be treated together without great liability to confusion and error. 21 L. R. A. 128, note. . . Such a contract [to leave the offer open for the specified time] is subject to all the rules governing other contracts, and in general must be supported by a consideration. Coleman *v.* Applegarth, 68 Md. 21 [11 Atl. 284, 6 Am. St. R. 417]. Where a consideration is paid for the option, however, the party making the offer can not lawfully withdraw it. If the offer is in writing, for a valuable consideration, and time is given within which it shall stand open for acceptance, such option, during the time specified, is irrevocable. Weaver *v.* Burr, 3 L. R. A. 94 [31 W. Va. 736, 8 S. E. 743]; Bradford *v.* Foster, 87 Tenn. 4 [9 S. W. 195]; Linn *v.* McLean, 80 Ala. 360; Souffrain *v.* McDonald, 27 Ind. 269; Herrman *v.* Babcock, 103 Ind. 461 [3 N. E. 360]." The rule, therefore, may be regarded as settled that a contract by which the owner of property agrees with another person that the latter shall have a right to buy the property at a fixed price within a certain time, if based upon a valid consideration, is binding and may be enforced.

In *Black* v. *Maddox,* supra, it was held that a consideration of one dollar, the instrument relied on being under seal, was sufficient to support the option. And in Mathews Slate Co. *v.* New Empire Slate Co., 122 Fed. 972, it was said, "This court is of the opinion that if two persons enter into a contract in writing under seal, by which one party, in consideration of $1, the payment of which is acknowledged, agrees to sell and convey to the other party within a specified time certain lands and premises, on payment by the other party of a specified consideration, such contract is valid and binding."

The instrument sued on in the present case, the same being under seal, contains the following language: "The consideration of this agreement is as follows: one dollar cash in hand this day paid, the receipt of which is hereby acknowledged by the party of the first part, and the faithful performance of the agreement hereinafter specified and which is hereby made a part of this contract. Said party of the first part hereby sells their entire shingle output [local wagon trade excepted] from March 1st to September 1st, [1905], for No. 1s at $2.00, and March 1st to October 1st, for No. 2s at 75

cents: Beginning September 1st for No. 1s, and October 1st for No. 2s, until March 1st, 1906, No. 1 shingles at $2.25, and No. 2 shingles at $1.00." As we have pointed out above, the words, "hereby sells their entire shingle output," amount to nothing more than an offer or proposal of sale. The "output" of shingles contemplated was of shingles not then manufactured and on hand, but of shingles to be manufactured after the date of the signing of the agreement. But inasmuch as this undertaking was founded upon a sufficient consideration, it was a valid and binding contract upon the part of Sanders & Jenkins to sell and deliver to Simpson & Harper their entire shingle output, local wagon trade excepted, between the dates named in the contract, upon the acceptance by the latter of the terms of the offer within the time contemplated by the contract.

It may be that the terms of the instrument are not perfectly clear as to when the orders for shingles were to be given, and the time within which the offer was to remain open. But if the instrument be ambiguous in this respect, parol evidence, which does not take from or vary the terms of the writing, is admissible to show the meaning put upon it by both parties at the time of its execution, and the court will also hear evidence as to the attending circumstances, in order to explain the ambiguity. Civil Code, §§ 3673, 3675; *Armistead* v. *McGuire*, 46 *Ga.* 232; *Novelty Hat Co.* v. *Wiseberg,* 126. *Ga.* 800 (55 S. E. 923). And if the instrument, embracing the proposal or offer to sell, is silent as to the time given for acceptance, the offer will be construed to remain open for a reasonable time. Stone *v.* Harmon, 31 Minn. 512 (19 N. W. 88); Larmon *v.* Jordan, 56 Ill. 204; Fitzpatrick *v.* Woodruff, 96 N. Y. 565.

Special demurrers as well as general demurrers were filed by the defendants; but it is inferable from the order passed in the case that only the questions raised by the general demurrer were decided by the court below, and we have not undertaken to pass upon the questions made by the special demurrers, and in remanding the case have left open such questions as were made by the special demurrers to be determined.

*Judgment reversed. All the Justices concur, except Holden, J., who did not preside.*