### 16395. MANGET *v.* CARLTON.

1. An agreement between two persons to enter into a joint adventure, partaking of the nature of a partnership, for the purpose of dealing or trading in lands for a profit, into which one of them is to put property and to which the other is to apply his skill or service, and which does not contemplate a transfer of title from one of the parties to the other or that either shall become the other's vendor or purchaser, is not within the statute of frauds, notwithstanding it may occur or even be intended that as an *incident* of the enterprise one of the parties may take and hold title to lands for the benefit of both.

2. Where M., an owner of property, made an agreement with C., "offering" the property to C. "to trade or exchange" and stipulating that C. would place the title in M. to any property traded for, and would pay M. for his original property "from first funds received," and that "after this is done," M. and C. are "to have equal rights and share equally in the property" acquired by the exchange, "dividing all profits from sale of same," the mere fact that C., in pursuance of the agreement, effected an exchange of the original property for other property of a greater value, would not entitle C. to recover a money judgment against M. for any part of the difference between the values.

3. An agreement by one of the parties to a controversy to accept a certain sum of money in settlement, without any promise by the other to pay it, does not render the latter liable therefor, although the agreement is in writing and signed by both of the parties.

DECIDED NOVEMBER 17, 1925.

Complaint; from Fulton superior court—Judge Bell. February 20, 1925.

John A. Carlton filed suit, in two counts, against John A. Manget. The first count alleged the making of the following contract:

"Atlanta, Ga., January 25, 1922.

"This contract entered into between John A. Carlton and John Manget is as follows: Manget offers the Avalon Apartments to Carlton to trade on following basis. Manget to put in Avalon at $175,000.00 net, purchaser to assume outstanding paper against same. Carlton to trade same for farm and town property, keeping title to·same in Manget's name, and to pay Manget for his equity in Avalon from first funds received. After this is done, then Carlton and Manget to have equal rights and share equally in property traded for Avalon, dividing all profits from sale of same.

[Signed] "John A. Carlton,
[Signed] "John A. Manget."

"Witness:
[Signed] "A. T. McNeily,
[Signed and sealed] "Joe S. Wilson, N. P. State at large."

It was alleged: that plaintiff worked up a trade of properties between Manget and one J. C. Ritch, wherein Manget exchanged Avalon Apartments for the "2800 acre farm in Wayne county, Georgia, known as the Ritch farm and all live stock, tools, machinery, farm equipment, and feed stuff on said farm, which consisted of some improved property in the town of Odom, Georgia, and land lots number 85, 86, 87, 88, 70, 71, 72, 122 and 124, in Wayne county, Georgia, and the live stock, feedstuff, machinery, etc., more fully described in the deed from J. C. Ritch to John A. Manget which was executed and delivered in the early spring of 1922;" that each of the parties to such trade assumed the outstanding encumbrance on the property thereby acquired by him, or, in other words, that the trade was equity for equity; that Manget's equity in Avalon Apartments was $37,000.00, and that Ritch's equity in the other property was $125,000.00, so that Manget gained by the deal the equivalent of $88,000.00; "that your petitioner's interest in said property under the above pleaded agreement between plaintiff and defendant was $44,000.00, and defendant has at all times failed and refused to turn over to petitioner said $44,000.00, or any part thereof, and is now indebted to your petitioner in the sum of $44,000.00, for which sum he·brings this action against defendant and prays judgment against him."

The second count alleged substantially the foregoing and also that on a controversy arising between the plaintiff and the defendant with respect to the plaintiff's interest in the "said Ritch farm, or Wayne county property," they entered into another agreement as follows:

"Atlanta, Ga., March 16, 1922.

"*Contract* between Manget & Carlton.

"In consideration of sale or exchange of farm in Wayne county Carlton agrees to accept fifteen notes of $1,000.00 each, payable on 1st Oct. 1922, and one payable each month thereafter · on the first day, in full settlement of all interest he has and all obligations in regard to trade.

[Signed] "John A. Manget,

[Signed] "John A. Carlton."

"Witness: [Signed] H. H. Wenck."

It is alleged "that defendant never did fill out, sign, and deliver said series of notes to plaintiff though he agreed in writing to do so," nor has he paid any part of the money due. The prayer was to recover $15,000 and interest.

The defendant interposed a demurrer, the grounds of which were that no cause of action was set forth, and that the agreements relied on were unenforceable under the statute of frauds. The demurrer was overruled and the defendant excepted.

*E. R. Craighead, W. C. Henson,* for plaintiff in error.

*Hill & Adams,* contra.

BELL, J. (After stating the foregoing facts.)

1. It is contended that the plaintiff's claim of a right in the Ritch farm is necessarily founded upon a contract for the sale of an interest in land within the meaning of the statute of frauds, and that the writing as to this property was insufficient to satisfy the statute. Whether, if a writing was necessary at all, the language in the agreement referring to the property thereafter to be acquired as "the property traded for Avalon" would furnish a sufficient key for its identification, and whether, if it would not, there was yet such performance as would make an exception to the statute if it would otherwise be applicable, are questions which we will pass over without decision, being of the opinion, as we are, that the agreement was not one falling within the operation of the statute. It· appears that the parties made a contract to enter into

a joint adventure, if not a partnership, for the purpose of dealing or trading in lands for profit, into which one of them was to put property and the other was to put his skill or service, and that the contract did not contemplate a transfer of title from one of the parties to the other, or that either should become the other's vendor or purchaser.

It is generally held that the statute of frauds has no application to an agreement of such character. *Lane* v. *Lodge,* 139 *Ga.* 93 (76 S. E. 874); *Black* v. *Black,* 15 *Ga.* 445 (3); Bates *v.* Babcock, 95 Cal. 479 (30 Pac. 605, 16 L. R. A. 745, 29 Am. St. Rep. 133); Hoge *v.* George, 27 Wyo. 423 (200 Pac. 96, 18 L. R. A. 469, 200 Pac. 96; 27 C. J. 221, § 207.

This is true notwithstanding it may occur, or even be intended, that, as an *incident* of the enterprise, one of the parties will take and hold title to lands for the benefit of both. In such case the title of the holder is subject to an implied trust in the other party's favor to the extent of the other's interest. Civil Code (1910), § 3739; *Sloan* v. *Haley,* 18 *Ga. App.* 631 (90 S. E. 74); *Swift* v. *Nevius,* 138 *Ga.* 229 (2) (75 S. E. 8); *Jenkins* v. *Georgia Investment Co.,* 149 *Ga.* 475 (1) (100 S. E. 635); *Pound* v. *Smith,* 146 *Ga.* 431 (4) (91 S. E. 405); *Wilder* v. *Wilder,* 138 *Ga.* 573 (1) (75 S. E. 654).

2. In this division the discussion is confined to the first count, and the word "petition" is limited accordingly. While the transaction in question was unaffected by the statute of frauds, we do not think that the petition was sufficient to withstand the demurrer. Under the terms of the original agreement, the "first funds received" were to be used by Carlton in paying Manget for his equity in "Avalon," and it was not until payment had been made therefor in full that the parties were to "have equal rights and share equally in the property traded for Avalon, dividing all profits from sale of same." So long as Manget acted properly and in good faith, Carlton would have no claim against him for a division of potential profits, until he, Manget, was paid for the property that he had put into the venture. It is noticed, too, that the petition alleged that the value of the Ritch property was $150,000, subject to a lien for $25,000, which Manget assumed, and it might possibly be true that this incumbrance should be removed, before there would be any "first funds" which could be paid on the equity of

Manget in "Avalon." But as to this it is unnecessary to express any opinion at the present time. Even if Manget were fully reimbursed, the mere fact that the value of the property in which he and Carlton had then become jointly and equally interested was of a certain amount would not, under the terms of their agreement, render him liable to Carlton for the value of Carlton's interest. Since the petition fails to allege that Manget had been paid for his equity in Avalon Apartments, or that the property had been sold, or that Manget had in any way violated the terms of the agreement, it did not state a cause of action. As already indicated, the fact that the plaintiff was instrumental in bringing about an exchange of the property belonging to the defendant for other property of a greater value would not, without more, entitle him to recover a money judgment for any part of the difference. This is all the petition shows. If the Ritch property has not been sold and Manget has committed no breach of his contract, he, Manget, is not subject to be sued for the profits which the other party might enjoy on a final consummation of the project. Whether, if he sought to exclude Carlton without a sale, Carlton could have a remedy in equity to establish his interest and to have a sale made and the proceeds applied as provided in the contract, and whether, if so, such would be the only remedy, are questions which merely suggest themselves as problems which might possibly arise in some case as a result of a contract like that under consideration. See cases cited lastly in the preceding division and those collected in note in 18 A. L. R. 498 et seq. If Manget has sold the property, the plaintiff could, no doubt, recover his share of the profits, if any, to be ascertained according to the terms of the agreement, and if Manget was guilty of unfair dealing in the sale, the plaintiff's claim should likely be based on actual values and not on the price received; but again, neither of these cases is made by the petition, and it is useless to imagine what facts would entitle the plaintiff to recover. Suffice it to say that the petition fails to show the defendant's violation of any duty to the plaintiff whatsoever, and therefore does not set forth a cause of action.

3. The second count is fatally defective because the instrument declared on contains no promise on the part of the defendant. It shows that Carlton agreed to accept notes in the aggregate of $15,000 in settlement of the controversy, but not that Manget

agreed or promised to give them or to pay this or any other amount. The undertaking was purely unilateral, purporting only to bind Carlton, notwithstanding it was signed by both parties. Payment can not be exacted of Manget merely upon Carlton's promise to accept it. Civil Code (1910), § 4230; *Cooley* v. *Moss*, 123 *Ga.* 707 (2) (51 S. E. 625); *Simpson* v. *Sanders*, 130 *Ga.* 265 (1) (60 S. E. 541).

Each count of the petition was subject to general demurrer.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*