36274, 36289.  BARNES *et al. v.* DIDSCHUNEIT;
and *vice versa.*

Decided September 24, 1956—Rehearing denied November 20, 1956.

*Robert Carpenter, Ferrin Y. Matthews, A. Tate Conyers,* for plaintiff in error.

*Carter, Latimer & Savell,* contra.

Felton, C. J. ■ Since we must consider the cross-bill of exceptions and because that ruling bears on the consideration of the question presented in the main bill, we will first consider the cross-bill. In his cross-action, the defendant J. C. Barnes alleged: "3. Defendant shows that in 1946 he entered into an agreement with the plaintiff by which the defendant was to devote his time and services in locating real estate to be purchased with the money furnished by the plaintiff; that the defendant was to locate said property, secure the purchasing price, handle the purchase, and that said property would be resold through real-estate brokers; that the profit realized upon said property and its resale was to be divided equally between the plaintiff and your defendant. 4. In accordance with said agreement, the defendant using the plaintiff's money on three separate occasions did purchase one lot on each of said occasions; said property being located on Altedena Place, S. W., Atlanta, Georgia, said transactions taking place during the years 1946, 1947 and 1948. 5. On the above said sales the profit from same was divided equally between plaintiff and defendant. The credit of $83.29 (applied by the plaintiff against the total indebtedness

of $1,750, and leaving the amount sued for by the plaintiff of $1,666.71) was the amount of profit due defendant after the last of said resales of property. 6. Defendant shows that in the fall of 1952, at the request of the plaintiff, he began searching for more real estate to be purchased with the money of the plaintiff. As a result of the time and effort expended by defendant he did locate a tract of land on Northside Drive at Eighth Street, Atlanta, Georgia, which had six Negro dwellings located upon it. 7. Defendant did handle the negotiations for the purchase of this property and did effectuate the purchase of same, for the sum of $10,500 in December, 1952. 8. The closing of the purchase took place in the office of Brewer Head Company and said firm handled the rentals on said property, under the instruction of defendant, until the property was resold in October, 1954. 9. Said property was resold on or about October 11, 1954, for the sum of $13,000. 10. Defendant had no knowledge of the property being resold, the date of the sale, nor the sales price. 11. Defendant shows that after the closing of said sale, the costs rental, and option fees, were deducted and the plaintiff netted the sum of $4,277.56, said sum representing the profit from the resale and the rentals received from the time the property was purchased until resold. 12. Under the agreement with plaintiff and defendant, the defendant is entitled to one-half of the profit, or $2,138.78 and for which sum your defendant sues. 13. Defendant further shows that after he learned of the resale of the property, on numerous occasions well known to plaintiff, he offered to settle up with the plaintiff on the amounts each owed the other, but that the plaintiff has failed and refused to make an accounting or to pay to defendant one-half of the profits due him. 14. Defendant further shows that the plaintiff on many occasions, well known to him, has told defendant not to worry about the payments on the note but that they would take care of it all at a later date. 15. Defendant shows that the plaintiff in accordance with the above said statement did not insist upon any payments upon the note until approximately ninety days after the note was signed. After the lapse of approximately ninety days the plaintiff sent a collection letter to your defendant. Defendant shows that he then informed the plaintiff of the credit due him from the sale of the property in

1948 and that the plaintiff did apply said credit to the total indebtedness. 16. After applying said credit the plaintiff did write your defendant's employer concerning the defendant not paying said note and did thereafter on March 17, 1955, institute this suit against your defendant. 17. Defendant shows that at no time since the property was resold on or about October 11, 1954, has the plaintiff given to defendant an accounting of the profit, but that the plaintiff has failed and refused to give such an accounting and to pay to the defendant the money owed to him."

The demurrers to the cross-action were on the grounds (1) that no cause of action was shown, and (2) that the cross-action showed that the defendant was a real-estate broker, and since it was not alleged that he was licensed under the Georgia law as a real-estate broker, he could not collect the alleged commissions sued for.

The plaintiff contends that no cause of action was shown in the cross-action because the contract sued on was too vague and indefinite to be enforceable. This contention is without merit. While the facts alleged may not show an enforceable executory contract covering all the transactions, it does allege single instances of offer and acceptance. See Code (Ann.) § 20-108, catchword, "Offer and Acceptance." While an agreement or contract lacking in mutuality is nudum pactum (Code § 20-301), "a nudum pactum becomes binding when one party performs his part and the other party gets the benefit of such performance. Bishop on Contracts (2d), § 87; *Strachan* v. *Burford*, 173 *Ga.* 821 (162 S. E. 120); *Whitley* v. *Powell*, 47 *Ga. App.* 105 (169 S. E. 766)." *Webb* v. *Pullman Co.*, 57 *Ga. App.* 772, 775 (196 S. E. 477). "While the contract as originally entered into might not have been enforceable, on the ground that it was without consideration and unilateral, the part performance of the contract and the services rendered in the business by the petitioner, as set forth and alleged in his petition, supplied the lack of mutuality and rendered the contract enforceable and a breach of it actionable. The defendant could not take advantage of the offer of the petitioner, as set forth in the pleadings of the latter, and receive the benefit of his services and then breach the contract, without rendering himself liable." *Brown* v. *Floding*, 173 *Ga.* 400, 404 (160 S. E. 604).

The contention that the cross-action showed that Barnes was an unlicensed real-estate broker and was suing for commissions is without merit. The cross-action was not subject to a general demurrer on this point. Code § 84-1402 applies to one who deals as described in that section "for another." As against a general demurrer the cross-action does not show that Barnes dealt solely for the plaintiff. Under the allegations, Barnes could have proved that he did not buy and sell or negotiate for the plaintiff alone but for the benefit of both himself and the plaintiff under the terms of their agreement. Also see Code § 84-1403. The fact that the plaintiff furnished the money, and the legal title to the property was taken in the plaintiff's name, did not prevent Barnes from having an interest in the property and the benefits. *Manget* v. *Carlton,* 34 *Ga. App.* 556 (130 S. E. 604). The legal effect would be the same whether the plaintiff and defendant J. C. Barnes were partners or joint adventurers.

■ Since the defendant introduced evidence that he was not acting solely for the plaintiff but for the plaintiff and himself under the agreement, and since his proof otherwise supported his allegations, the award of the nonsuit was not authorized. *Gray* v. *Schlapp,* 92 *Ga. App.* 261 (1) (88 S. E. 2d 536).

The court did not err in overruling the demurrers to the cross-action.

The court erred in granting a nonsuit.

*Judgment affirmed on cross-bill of exceptions; reversed on the main bill. Quillian and Nichols, JJ., concur.*

ON MOTION FOR REHEARING.

FELTON, C. J. The defendant in error strongly contends that the ruling in *Hazlehurst* v. *Southern Fruit Distributors,* 46 *Ga. App.* 453 (4) (167 S. E. 898) controls this case. In that case the plaintiff sued in two counts. The first count was upon a quantum meruit and the second count was upon an express contract. The trial court in that case sustained a demurrer to the second count and the case was tried on the first count. In that case the evidence conclusively shows that there was no agreement to pay the plaintiff anything. It therefore follows that nothing said by the court in that case could be related to the issues in the instant case.

*Motion for rehearing denied.*