**CROWN CONSTRUCTION COMPANY, Plaintiff-Appellant,**

**v.**

**OPELIKA MANUFACTURING CORPORATION, Defendant-Third-Party Plaintiff-Appellee,**

**v.**

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Third-Party Defendant-Appellant.**

No. 72–2974.

United States Court of Appeals, Fifth Circuit.

June 4, 1973.

Rehearing Denied June 28, 1973.

Harry L. Griffin, Jr., Smith, Currie & Hancock, Atlanta, Ga., for appellants.

A. Felton Jenkins, Jr., Kirk McAlpine, Atlanta, Ga., Stanton Schuman, Donald J. Ryan, Chicago, Ill., for appellee.

Before BELL, GOLDBERG and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

This appeal is from the district court's grant of summary judgment on Motion of Opelika Manufacturing Corporation (Opelika) against Crown Construction Company (Crown) and the surety, Fidelity and Deposit Company of Maryland, (F. & D.) on Crown's bid bond accompanying its low bid of $822,000 to construct two facilities in Georgia for Opelika, 343 F.Supp. 1266.

Crown brought action below against Opelika alleging breach of the construction contract. Opelika counterclaimed against Crown and F. & D. for breach of the same contract. Both parties moved

for summary judgment on the question of liability for the respective breaches of contract alleged by the original suit and the counterclaim. The district court denied Crown's motion for summary judgment and granted Opelika's motion to affix liability on both Crown and F. & D., directing that judgment be entered against Crown and its surety jointly and severally for $28,000. We affirm the judgment against Crown and modify and affirm as to F. & D.

We summarize the undisputed supportive facts upon which summary judgment was granted. Opelika, through its architect, Robert and Company Associates (Robert), invited Crown and other general contractors to submit bid proposals on forms prepared by the architect for the construction of a bleaching and finishing addition and a new warehouse addition to its sewing and finishing plant located in Hawkinsville, Georgia. At the bid opening on March 2, 1971, Crown's bid of 822,000 dollars was determined to be the lowest responsible and responsive bid proposal. On March 31, 1971, Robert, acting for Opelika, accepted Crown's bid proposal by telegram thereby completing the formation of a construction contract with Crown. On or about April 2, 1971, Robert sent a formal construction contract to Crown. On April 13, Crown returned this contract to Robert for the correction of certain technical errors therein. In the meantime, Crown began preparing to perform construction. As part of this preparation Crown inquired of Robert when it could expect to receive the assignment of certain separately let mechanical, fire protection and electrical subcontracts referred to in the contract documents. Robert informed Crown that Opelika had decided not to assign these subcontracts to the general contractor for management but rather had decided to allow the architect to coordinate construction. Crown then informed Opelika that it would not build the projects without assignment of the subcontracts, and Opelika advised Crown it would not assign the subcontracts. No formal contract was ever signed. Subsequently, Opelika entered into a contract with the next lowest bidder, Fiske-Carter Construction Company, for a price of 850,000 dollars.

The district court concluded that the bid proposal clause dealing with the assignment of subcontracts [1] was not ambiguous, holding that under the Georgia jurisprudence generally and expressly under Manget v. Carlton, 1925, 34 Ga. App. 556, 130 S.E. 604, and Cooley v. Moss, 1905, 123 Ga. 707, 51 S.E. 625, "one who 'agrees to accept' an obligation cannot expect or require the fulfillment of that obligation from the other party in the absence of the *expressed* intention of both parties that they are to be mutually obligated." Citing Lowery Lock Co. v. Wright, 1923, 154 Ga. 867, 115 S.E. 801; Palmer Brick Co. v. Woodward, 1912, 138 Ga. 289, 75 S.E. 480; Ellis v. Dodge Bros., 5 Cir., 246 F. 764,

---

1. The disputed clause is as follows:

In addition to the above, the undersigned bidder agrees that he will accept assignment from the Owner, of the mechanical, fire protection and electrical subcontracts for management under the General Construction Contract, marked up from the net subcontract price by the following percentages:

Heating, Ventilating and
Air Conditioning  Five percent  5%
Fire Protection  Five percent  5%
Electrical  Five percent  5%

In addition to the above, the undersigned bidder agrees that he will accept the adjustment of mechanical, fire protection and electrical subcontracts on account of work to be added to the Contract, by the following percentages:

Heating, Ventilating, and
Air Conditioning  Eight percent  8%
Fire Protection  Eight percent  8%
Electrical  Eight percent  8%

The basic construction commitment was couched in similar language:

The undersigned bidder further declares that he will do all the work called for or implied . . . and that he will accept as complete compensation therefor, the sums as listed in the following schedule . . .

Crown urges that Georgia law does not in these circumstances bar a finding of implied contractual obligations, and that the emphasized clause (note 1 supra) when read in the context of the whole contract obligated Opelika to assign the subcontracts.[2]

■ We agree with the district court that the " 'agreement to accept' the subcontracts did not in turn obligate the defendant to a required assignment of those subcontracts. This particular phrase of the contract is totally unilateral and not binding on both parties . . ." The lower court went on to note that applicable cases "infer the principle that one who 'agrees to accept' an obligation cannot expect or require the fulfillment of that obligation from the other party in absence of the express intention of both parties that they are to be mutually obligated," citing *Manget*, supra.

■ Crown alternatively contends that the district court should have considered the relevance of Crown's several discussions with an officer of Robert, the architect, asserting that it was led to believe (or was not corrected in its belief) that the subcontracts would be assigned. Robert had no right to bind Opelika, and in the absence of ambiguity in the contractual terms, such interpretations by Robert would be entirely irrelevant.

Summary judgment was properly granted.

One minor modification is required. F. & D.'s bid bond liability was expressly limited to 2% of Crown's bid of $822,000, or $16,440. The district court's award of damages jointly and severally against Crown and F. & D. is modified so as to limit the recovery against F. & D. to $16,440. Fixing Crown's

judgment liability of $28,000, based on the difference between its bid and the next higher bid of $850,000, was proper.

Modified, and as modified, affirmed.

2. Crown also asserts on appeal that if permitted, it would have shown the custom of the trade to be that agreements to accept assignments of subcontracts are treated as mutually binding. Our holding that there is no ambiguity present is the answer to

this contention since recourse to usages and customs would be available only to resolve an ambiguity.