## S95A0510. THOMAS v. GARRETT et al.
### (456 SE2d 573)

CARLEY, Justice.

Appellant is a childless widow and appellees are her niece and her niece's husband. Shortly after undergoing heart surgery at the age of 73, appellant sold her farm to appellees. She originally chose to remain and share the farmhouse with appellees and their children. After several months, however, she moved out and brought this action to cancel her deed to appellees. Appellant appeals from the trial court's grant of a directed verdict in favor of appellees.

1. From the outset, there were three contemplated elements of consideration for appellant's sale of the farm to appellees. She would receive $50,300 in cash, be paid $675 per month for the rest of her life and be allowed to remain on the farm in appellees' care. However, appellees were planning to borrow the $50,300 from a lending institu-

tion and, for that reason, a real estate attorney recommended that the sales contract be drafted to reflect the $50,300 in cash as the sole consideration for the conveyance and that appellees' additional promises for the life-long payments to and care of appellant be addressed in a separate post-closing agreement. This recommendation was followed and, after the closing, such a separate written agreement was formally executed by appellant and appellees. It was in accordance with this post-closing agreement that appellant remained on the farm after the sale and that appellees' payments to her of $675 per month continued even after she moved. At trial, appellant objected to the admission of evidence regarding this post-closing agreement. The trial court overruled her objections and she enumerates this evidentiary ruling as error.

Appellant first urges that evidence regarding the post-closing agreement should have been excluded because the original sales contract contained a merger clause. The purpose of a merger clause is to preclude any unilateral modification of a written contract through evidence of pre-existing terms which were not incorporated therein. See *Southeastern Underwriters v. AFLAC*, 210 Ga. App. 444, 447 (2) (436 SE2d 556) (1993). It is clear, however, that the modification of a contract may be accomplished by a subsequent mutual agreement of all the parties thereto. *McMurray v. Bateman*, 221 Ga. 240, 253 (2) (144 SE2d 345) (1965). Here, the post-closing agreement was mutually executed by appellant and appellees subsequent to the original sales contract. That original sales contract provided that it would survive closing. By its terms, the post-closing agreement purports to be a subsequent written modification of the surviving original sales contract, expressing the entirety of appellees' actual consideration for appellant's conveyance. As such, the post-closing agreement would not be rendered inadmissible by the merger clause in the original sales contract. See generally *Augusta Southern R. Co. v. Smith & Kilby Co.*, 106 Ga. 864 (33 SE 28) (1899). Parties to a contract can, by subsequent mutual agreement, modify a written contract "that did not express their actual agreement, just as completely and effectually as they might do with respect to one that did fully and correctly express such intention." *Albany Fed. S & L Assn. v. Henderson*, 200 Ga. 79, 105 (7) (36 SE2d 330) (1945).

Appellant urges that evidence of the post-closing agreement nevertheless should have been excluded as irrelevant, since appellees' promises of life-long payments and care would be unenforceable against them for lack of any present consideration from her. As in *McCrackin v. Clay*, 151 Ga. App. 744 (261 SE2d 471) (1979), appellant's prior conveyance to appellees is the only consideration recited for their promises to her in the post-closing agreement. However, appellees do not challenge the enforceability of the post-closing agree-

ment against them and, indeed, appellees could not do so, since they undertook to perform the agreement and appellant accepted their performance for several months. Compare *McCrackin v. Clay*, supra. This performance by appellees and acceptance by appellant would render the agreement enforceable. *Brown v. Floding*, 173 Ga. 400, 404 (1) (160 SE 604) (1931); *Barnes v. Didschuneit*, 94 Ga. App. 661, 664 (1) (96 SE2d 216) (1956).

It follows that evidence of the post-closing agreement was correctly admitted over appellant's objections.

2. Appellant urges that the issue of appellees' exercise of undue influence over her should have been submitted to the jury.

The evidence shows that appellant had a close familial relationship with appellees. Contrary to appellant's contention, however, the evidence would not authorize a finding that she also had a confidential relationship with them. Compare *Tingle v. Harvill*, 228 Ga. 332, 338 (5) (185 SE2d 539) (1971). Indeed, the undisputed evidence showed that, throughout the relevant time period, appellant conducted all of her own business affairs independently of, rather than through, appellees. Compare *Childs v. Shepard*, 213 Ga. 381 (1) (99 SE2d 129) (1957); *Sutton v. McMillan*, 213 Ga. 90, 94 (3) (97 SE2d 139) (1957). Accordingly, no rebuttable presumption of appellees' undue influence arose and the evidentiary burden was on appellant to show that they actually exercised undue influence over her. Compare *Trustees of Jesse Parker Williams Hosp. v. Nisbet*, 191 Ga. 821, 822 (6) (14 SE2d 64) (1941).

Undue influence is such "as amounts either to deception or to force and coercion which destroys free agency." *Trustees of Jesse Parker Williams Hosp. v. Nisbet*, supra at 822 (8). A lesser amount of influence may be necessary to dominate a mind that is impaired by age or disease. *Fowler v. Fowler*, 197 Ga. 53, 54 (2) (28 SE2d 458) (1943). The evidence did show that appellant was elderly and in poor health. However, there was no evidence that the deed had been executed by appellant as the result of any undue influence exercised by appellees. *Scoggins v. Strickland*, 265 Ga. 417 (456 SE2d 208) (1995); *Lunsford v. Armour*, 194 Ga. 53 (2) (20 SE2d 594) (1942); *Stinson v. Daniel*, 193 Ga. 844 (1) (20 SE2d 257) (1942). To the contrary, appellant never disputed that the sale of the farm to appellees was an idea which had originated with her. She simply testified that she could not remember that being the case. Accordingly, the trial court correctly granted a directed verdict in favor of appellees as to the issue of their exercise of undue influence over appellant.

3. Appellant urges that a jury question was presented as to cancellation of the deed for "[g]reat inadequacy of consideration, joined with great disparity of mental ability. . . ." OCGA § 23-2-2.

With regard to the adequacy of consideration, the evidence shows

that the fair market value of the farm greatly exceeded $50,300. However, $50,300 is not all that appellant received as consideration for her conveyance of the farm to appellees. She also received appellees' enforceable promises of life-long payments of $675 per month and care so long as she remained on the farm. Moreover, at the closing, appellant executed a separate affidavit acknowledging that she was conveying her farm for less than its fair market value and that she was doing so because of her "natural love and affection" for appellees. *Warren v. Warren*, 221 Ga. 227, 228 (1) (144 SE2d 115) (1965). A good consideration can be founded "on love and affection toward one to whom a natural duty exists, such as near relatives by either consanguinity or affinity. . . ." *Cannon v. Williams*, 194 Ga. 808, 813 (2) (d) (22 SE2d 838) (1942).

With regard to a disparity of mental ability, " '[w]eakness of mind not amounting to imbecility is not sufficient mental incapacity to justify setting a deed aside. [Cits.]" *Warren v. Warren*, supra at 228 (2). Accordingly, appellant had the burden of showing that she was "non compos mentis, that is entirely without understanding at the time the deed was executed. [Cits.]" *Leachmon v. Leachmon*, 239 Ga. 780 (2) (238 SE2d 863) (1977). There was opinion evidence that appellant's recent surgery, coupled with her continuing medication, could have had a detrimental effect on her mental capacity at the time she executed the deed. However, the actual witnesses to appellant's execution of the deed had no doubts as to her mental capacity. Moreover, her physician personally examined her the day after the closing and found no indication of her mental incapacity. This evidence was such as to demand a finding that appellant had sufficient mental capacity to execute the deed. *Warren v. Warren*, supra at 228 (2); *Gornto v. Gornto*, 217 Ga. 136, 141 (1) (121 SE2d 139) (1961).

To authorize cancellation of a deed pursuant to OCGA § 23-2-2, there must be a showing of both great inadequacy of consideration and great disparity of mental ability. *Bailey v. Williams*, 215 Ga. 395, 397 (1) (110 SE2d 673) (1959). Appellant showed neither. Accordingly, the trial court correctly granted a directed verdict in favor of appellees as to appellant's claim under OCGA § 23-2-2. *Warren v. Warren*, supra.

4. Appellant's remaining enumerations of error are moot.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 8, 1995.

*C. Alan Mullinax*, for appellant.
*Cook, Noell, Tolley & Wiggins, John S. Noell, Jr.*, for appellees.