## SCHMIDT *v.* MITCHELL.

1. Where an auditor's report of the evidence taken by him on the hearing of a case is specified in a bill of exceptions as part of the record and comes to the Supreme Court as such, the writ of error will not be dismissed upon the ground that "there is no such condensed and narrative brief of the evidence as the law requires."

2. The burden being upon a party excepting to an auditor's report, he has the right to open and conclude the argument, although he submits to the jury all the evidence contained in the report of the auditor, and the other party submits none.

3. Where evidence has been submitted to the jury tending to support a defense not pleaded, the court, upon proper request therefor by the plaintiff, should instruct the jury not to consider such evidence.

4. The general rule is that, in the absence of clear indications to the contrary, promises, each of which forms the whole consideration for the other, will not be held to be independent of one another ; and a failure of one party to perform on his part will exonerate the other from liability to perform.

Argued December 17, 1902.— Decided January 10, 1903.

Exceptions to auditor's report. Before Judge Roberts. Wilcox superior court. June 3, 1902.

*Gignilliat & Stubbs* and *Hal Lawson*, for plaintiff.
*Eldridge Cutts*, for defendant.

Fish, J.    Aug. Schmidt instituted proceedings to foreclose a mortgage on realty, given to him by T. I. Mitchell, to secure a promissory note made by the latter to the former, dated Oct. 30, 1891, and due Jan. 1, 1893, for $1,500, with interest from date at the rate of eight per cent. per annum.  Mitchell, for cause why the mortgage should not be foreclosed, answered, that the note secured by the mortgage was given for money advanced by plaintiff to him to be used in his sawmill business, it being agreed that he should ship to plaintiff the output of the mill; that when the note and mortgage were executed he was indebted to plaintiff, on account, about $250, which was paid soon thereafter; that in the latter part of 1898 he learned that plaintiff claimed the indebtedness on the account to be $1,082.15, and that plaintiff had been applying large payments made by defendant toward the satisfaction of such alleged old account, instead of crediting such payments upon the note.    By amendment to his original plea the defendant further alleged:  "(1) Defendant made to plaintiff numerous payments by shipment of rafts of timber, which were accepted by said Schmidt at their cash value in Darien, Ga., as cash payments, and were to be credited on the note and mortgage sought to be foreclosed.  Defendant attaches hereto, as part of his answer and amendment, an itemized statement of the date of receipt of said rafts by said Aug. Schmidt, the plaintiff, the number of said rafts, and the amount of such value of each raft, which statement is marked exhibit 'A.' (2) Defendant therefore pleads payment, and says that at the times in said statement annexed he paid to plaintiff, in Darien, Ga., the several sums indicated in said statement, aggregating about the sum of $9,901. 25.    And said defendant prays judgment against said plaintiff for the amount of excess of said payments over the amount of said note and mortgage."    The answer further set up, "that for a valuable consideration said plaintiff contracted and agreed in writing, after the execution of said note and mortgage, that there should be no charge of any interest whatever on said note and mortgage;" that, notwithstanding such contract, plaintiff had charged defendant $921.59 as interest.  Defendant prayed for an accounting; and upon his motion the case was referred to an auditor.    The auditor found: "There was due and unpaid on said

note on the 20th of September, 1895, the sum of $1,396.44, and nothing has been paid upon it since that date.    There is now due said sum of $1,396.44, and interest on the same at eight per cent. per annum from said 20th day of September, 1895." Mitchell filed exceptions to this finding, upon the grounds that the auditor erred, (1) in charging him with interest on the mortgage debt, and (2) in applying the proceeds of the sale of the rafts of timber shipped by the defendant to the plaintiff as credits upon the unsecured indebtedness due by defendant to plaintiff, rather than to the mortgage debt.    The jury found in favor of both exceptions, and that the mortgage debt had been paid.    Plaintiff's motion for a new trial having been overruled, he excepted.

1. The defendant in error moved to dismiss the writ of error, " because there is no such condensed and narrative brief of the evidence as the law requires."    Even if this were cause for dismissal of the writ of error, it would not apply in the present case, for the reason that the brief of evidence sent up is the brief of evidence contained in the auditor's report and is a part of the record, and properly comes here as such.    *Arendale* v. *Smith*, 107 *Ga.* 494.

2. Error was assigned, in the motion for a new trial, upon the refusal of the court to permit counsel for the plaintiff to open and conclude the argument before the jury.    It appears that the defendant, who had filed exceptions of fact to the report of the auditor, for the purpose of sustaining such exceptions, submitted to the jury all the evidence contained in the auditor's report, and that the plaintiff submitted no evidence to the jury.    The court did not err in the ruling made.    The Civil Code, § 4595, provides: " The report [of the auditor] shall be taken as prima facie correct, and the burden be upon the party making the exceptions, who shall have the right to open and conclude the argument."    " In all cases where exceptions of fact are submitted to the jury, the same shall be determined upon the testimony reported by the auditor, except that admissible material evidence introduced and not reported, and evidence improperly excluded, shall be submitted to the jury, and all inadmissible evidence shall be excluded from their consideration." Ib. § 4598.    " No new testimony shall be considered, except in those cases where, according to the principles of law, a new trial would be granted for newly discovered evidence."    Ib. § 4599. " Where exceptions of fact have been filed to the report of an audi-

tor, the judge shall cause the issue thus made to be submitted to the jury, in which trial only so much of the evidence reported as is material and pertinent to the issue then on trial shall be read to the jury." Ib. § 4600. The finding of the auditor being prima facie correct, and the burden of showing it to be erroneous being upon the party excepting thereto, and he being confined in this undertaking to the evidence reported by the auditor, material and pertinent to the issues of fact made by the exceptions, the fact that the plaintiff, who excepted, read all of such evidence to the jury and the defendant read none of it is no reason why the plaintiff should be deprived of the right, expressly given to him by the statute, to open and conclude the argument. The question for determination by the jury was, whether, under all the material and pertinent evidence submitted to the auditor and reported by him, his findings of fact should stand ; and as, in the determination of this question, it was necessary for the jury to consider all the pertinent and material evidence which the auditor had before him, the fact that the excepting party read all such evidence to the jury did not deprive him of the right to open and conclude the argument. Counsel for plaintiff in error cite *Arthur* v. *Commissioners of Gordon County*, 67 *Ga.* 220, wherein it was held : " The burden being upon him who excepts to an auditor's report, he is entitled to open and conclude, unless the other party introduces no testimony, in which case the right to open and conclude shifts to him." That decision was rendered in 1881, when, on the trial by a jury of exceptions of fact to an auditor's report, evidence other than that submitted to the auditor was admissible. *Roberts* v. *Summers*, 47 *Ga.* 434. The sections of the Civil Code, above quoted, providing that no evidence shall be considered by the jury but that reported by the auditor, except admissible material evidence which he failed to report, evidence improperly excluded by him, and newly discovered evidence, was codified from the act of December 18, 1894. Acts 1894, p. 123. Since the passage of that act, the reason upon which the ruling made in *Roberts* v. *Summers* was based no longer exists. There it was held that if the non-excepting party introduced no evidence, he was entitled to open and conclude the argument, the reason for giving him this right being that he did not exercise his right to introduce evidence. As the law now stands, the case is to be tried upon all the material and per-

tinent evidence reported by the auditor, which necessarily must be introduced by the excepting party, and, subject to the exceptions above indicated, the non-excepting party can not introduce any evidence at all, and therefore can not gain the right to open and conclude the argument by not introducing any.

3. The plaintiff, in writing, requested the court to charge the jury as follows: " I charge you that you are not to consider the question as to whether any payment made by defendant to plaintiff was wrongfully applied to any one demand of the plaintiff against the defendant rather than to another demand. Such question is not raised by the pleadings in this case. But in the consideration of any payment made by defendant to the plaintiff, you are to inquire only whether the demand to which it may have been applied was correct, just, and due at the time of said payment." The court refused the request to give this in charge, and complaint was made of this ruling in the motion for a new trial. We think the refusal of the request was erroneous, as an examination of the defendant's answer will disclose that no defense of a misappropriation of payments was set up. The answer did not recognize that the plaintiff held more than one demand against the defendant at the times it alleged the various payments were made. It distinctly alleged that there was only one demand, viz., the note secured by the mortgage, and charged that the plaintiff's claim of an outstanding prior indebtedness of the defendant to him, upon an old account, was fraudulent, and that the defendant did not even know of this fraudulent claim on the part of the plaintiff until the latter part of the year 1898, which was long after the payments, as alleged, were made. It is true that the answer stated that at the time the note was given the defendant was indebted to the plaintiff, upon an account, about $250, but it alleged that this account was paid soon thereafter, which left the note as the only indebtedness due the plaintiff by the defendant; and the whole answer, taken together, shows that the defendant planted his defense squarely upon the single proposition that he had paid the plaintiff all that he owed him, in that the note, the only indebtedness, had been more than fully paid by the proceeds of the rafts of timber shipped to the plaintiff, at Darien, Ga., and a judgment, by way of recoupment, was prayed for against the plaintiff for the amount of such excess. There is nothing whatever in the answer which can

be construed into an allegation that the defendant directed the plaintiff to apply the proceeds of the shipments of timber to the payment of the note, and, according to the contention set up by the answer, there could have been no reason for any such direction, as the answer claimed that there was only one demand, and that the defendant did not know, when any of the payments were made, that the plaintiff even claimed that there was another. The answer, instead of alleging an agreement by the plaintiff, or a direction by the defendant, to apply the payments to the note, simply assumes that they were to be so applied, because there was no other indebtedness of the defendant to the plaintiff to which to apply them. If the plaintiff really had two demands against the defendant, each of which was "correct, just, and due" at the time a payment was made, the plaintiff, in the absence of direction by defendant to the contrary, would have had the right to apply such payment to either demand, certainly to the older one; and as there was no plea of a misappropriation of payments, the charge requested by the plaintiff should have been given by the court.

4. Complaint was made, in the motion for a new trial, of the following charge of the court: "Look to the evidence and see whether or not there was a contract to dispense with the payment of interest, based upon a valuable consideration; and if you find as matter of fact that there was, then both parties would be bound by that contract, and that contract would not be changed simply because afterwards one of the parties violated the contract." There was evidence from which it, perhaps, could be inferred that, some five or six years after the execution of the note, it was agreed between the plaintiff and the defendant that the plaintiff would waive interest on the note, in consideration that the defendant would sell him "all sawn pitch pine timber handled or manufactured by" the defendant, during a certain period of time, at the price of $8.75 per thousand feet, instead of $9 per thousand feet, the market price. The record, however, contains no express contract to this effect. Upon the facts, the plaintiff contended that the agreement not to charge interest only applied to the defendant's indebtedness to him upon open account, while the defendant contended that it applied to the note secured by the mortgage. The plaintiff also contended that the defendant failed to comply with his agreement to deliver the timber, while the defendant contended that he de-

livered more than enough timber, at $8.75 per thousand feet, to pay all his indebtedness to the plaintiff. Upon the legal question involved, the plaintiff contended that even if his agreement not to charge interest applied to the note, he was not bound thereby, because the defendant had failed to carry out his part of the agreement, in that he had not furnished the timber; while the defendant contended that, even if he failed to furnish the timber, the plaintiff was still bound by his agreement not to charge interest, and his sole remedy against the defendant for a failure to supply the timber, at the agreed price, was a suit for breach of contract. The note, as we have seen, stipulated that it was to bear interest, from date at eight per cent. per annum. From the evidence, we think, this agreement as to the waiver of interest, even if it applied to the interest stipulated in the note, amounted to no more than this: that the plaintiff would waive the interest, if the defendant would furnish him with the timber as agreed. The sole consideration for the plaintiff's promise not to charge interest was the defendant's promise to furnish the timber at the price stated; and the whole consideration for the defendant's promise to furnish the timber, at such price, was the plaintiff's promise not to charge interest. The general rule is that, in the absence of clear indications to the contrary, promises each of which forms the whole consideration for the other will not be held to be independent of one another; and a failure of one party to perform on his part will exonerate the other from liability to perform. Clark on Contracts, 656. The agreement of the plaintiff not to charge interest was in consideration of, and conditioned upon, the performance by the defendant of his agreement to deliver the timber at the price stated, and not independent of the defendant's agreement to deliver the timber. This being true, if the defendant failed to perform his agreement, the plaintiff was discharged from the obligation to perform his. The charge of the court under consideration was, therefore, erroneous.

*Judgment reversed. By five Justices.*