## BROCK v. WILDEY.

1. An equitable petition by a principal against his agent, for an accounting for divers sums of money sent the agent for investment for the principal's benefit, and misapplied by the agent, is not multifarious because the several remittances may have been separate and independent transactions.

2. Where it does not affirmatively appear upon the face of the petition that the cause of action is barred by the statute of limitations, this defense can not be made by an oral motion to dismiss the case on the ground that the action is barred by the statute. '

3. An exception to an auditor's report which requires for its determination a consideration of some part or parts of the brief of evidence, is incomplete when the evidence necessary to be considered in passing thereon is neither incorporated therein, nor attached thereto as an exhibit, nor specifically pointed out in the brief of the evidence.

4. The charges complained of were adjusted to the pleadings and evidence, and were not open to the criticism that the court expressed an opinion on the facts, or assumed the existence of certain facts.

5. In the trial of exceptions of fact to an auditor's report, where exceptions of law filed thereto are overruled, the auditor's report is prima facie correct as to the facts which it finds, and the onus is on the party excepting to show that it is erroneous.

6. The letters allowed in evidence over objection were relevant to the issue.

Argued July 21, 1908.—Decided February 10, 1909.

Equitable petition. Before Judge Edwards. Haralson superior court. October 26, 1907.

On May 22, 1900, W. H. Wildey, a resident of the State of Illinois, filed his equitable petition in Haralson superior court, against U. G. Brock, of that county, alleging that on the _____ day of _____, 18__, he became acquainted with the defendant, who was at that time mayor of the city of Tallapoosa, and who represented himself as a man of means, controlling a large amount of land in and around Tallapoosa. The defendant represented to petitioner that the Alabama Fruit Growing and Winery Association, a corporation formed for the purpose of improving and selling lands, was selling its stock at fifty per cent. of its par value, and that money invested in this corporation would, inside of a few months, pay large dividends, and if petitioner desired to put money in it, the investment would be one of the best petitioner ever made. On the faith of this statement, and reposing trust and confidence in the defendant's integrity, petitioner, at the request of the defendant, sent him, on December 22, 1894, $375 to be in-

vested in fifty shares of the corporate stock of this association, of the par value of $25 per share. Brock immediately sent petitioner fifty shares of this stock, for which he had paid $300, and assured petitioner that the investment would pay fifty per cent. dividend in three months, and that he (Brock) would sell this stock at par inside of three months, and that he had invested $5,000 of his own money in the plant. Soon after receiving his stock certificate the petitioner, at the request of the defendant, sent to the latter his stock certificate, and also $312.50 of dividend certificates, duly transferred, to be sold for $600. On the       day of December, 1895, the Alabama Fruit Growing and Winery Association issued a second dividend certificate of $312.50 to petitioner, which he sent, on February 25, 1896, to defendant for collection, at his request. After receiving the stock and dividend certificates, defendant asked petitioner what he thought about trading the stock for fifty acres of land, and, without waiting for reply, defendant wrote petitioner that he had closed the trade for fifty acres of land, and had sent the deed to the clerk for record. These representations as to the purchase of land were false, and instead of collecting the stock and dividend certificates and sending the money to petitioner, as defendant had agreed to do, the defendant turned the stock over to the association and had stock issued to himself, and in his own name. The defendant procured judgment against the association for $325, collected the same, and applied the proceeds to his own use. The defendant collected of the association the stock and dividend certificates aggregating $1,250, and has not accounted for the same. On the       day of June, 1895, petitioner sent to the defendant $1,000, to be invested in a tract of land, on the representation that defendant would invest a like sum, and that the land could be sold within six months for double the cost, and if it could not be sold at that time, Brock would take the property and pay to petitioner $1,000, and ten per cent. interest. After receiving the $1,000, defendant wrote petitioner that he had closed a deal with a colony of Bohemians, and that he had let petitioner in on the deal, which statement was false and meant to deceive.

On the       day of       , the defendant sent to petitioner a note signed by Leo Blair for $650, representing that it was a note due defendant and petitioner for commissions on the sale

of a tract of land, and assuring petitioner that the note was good, and requested petitioner to pay him $300 for the interest of defendant, which he did. Later Brock wrote petitioner that Blair could not pay for the property, and to send the note back, and he would cancel the trade, and take the property for their joint account. Petitioner sent the note to Brock, who wrote him that he had invested petitioner's money in the land sold to Blair, which was worth more than $3,000, but that there was a balance of purchase-money due on same, which Brock would pay, and take the deed to himself and petitioner. The deal with Blair was canceled, but Brock took the deed in his individual name. The land referred to as Blair's land was the Lipham farm, now and for a long time owned by A. I. Head, J. R. Driver, and defendant. The defendant stated to petitioner that he had invested petitioner's money in the Lipham farm, which was true, but, instead of taking the deed in petitioner's name, he invested $600 of petitioner's money therein and took the deed in his own name. Afterwards the defendant procured of petitioner $300 under these circumstances: Defendant represented to petitioner that he had invested part of petitioner's money in twenty acres of land within the city limits of Tallapoosa, and one hundred acres of land lot 244, paying for the city lot $800, and contracting to pay $1,800 for the other lot, of which sum he had paid $1,500. Defendant requested that petitioner pay the balance of $300, and stated that the titles were and would be taken in their joint names. Petitioner sent $300 to defendant, but, instead of having the deed made to them jointly, the defendant caused the deed to be made to petitioner. At the time of the transaction the defendant represented that the city lot was worth $1,000, and the other lot was worth $2,500. The defendant assigned as a reason for taking the deed in petitioner's name, that he had signed a bond for a party for the sum of $1,000, and the party had "skipped," and that the court would meet in two weeks, and he feared a judgment would be taken against him, and he wished to save trouble. All of these statements as to the value of the land, and the bond, were false, and made to deceive, and did deceive petitioner. The title to the land is worthless; the deeds are made by a fictitious grantor; but even if the titles are good, the land is not worth more than $450. Petitioner had no information as to all the

falsehoods and frauds perpetrated upon him until sometime in the year 1898, when he made inquiries of the defendant concerning the disposition of his money, and in response to his inquiries the defendant made so many conflicting statements about the properties in which he stated that he had invested petitioner's money, that petitioner began to investigate and ascertained that he had been victimized and defrauded by the defendant. He discovered that the land which Brock had caused to be conveyed to petitioner was almost worthless, and that the titles thereto were invalid. Petitioner charges that all the representations by Brock were false and fraudulent, and made as part of a scheme to defraud him, but that petitioner was ignorant of the fraud until the year 1898. It is further alleged that Brock is insolvent, and refuses on demand to account to petitioner for his money; and in response to his demand for a settlement, the defendant replied: "Oh well, that whole thing is out of date," which petitioner alleges is untrue. The prayer is for judgment for the various sums against the defendant, and that the judgment be so molded as to declare that the defendant be held to be trustee for petitioner as to the one-third interest in the Lipham farm, and that title to one-third interest therein be decreed to be in petitioner; that the deed to petitioner to the city lot and the one hundred acres of lot 244 be declared null and void, and if the jury should find that the title is sufficient, then that petitioner shall account for only their true value, and have judgment against the defendant for the balance. By amendment petitioner asked that he have judgment for $600 of his money which was invested in the Lipham land, and that he be decreed to have a special lien on the defendant's one-third interest in that tract of land. There was also a prayer for general relief.

The defendant demurred and answered, and the court referred the whole case to an auditor. The auditor in his report made certain findings of law and fact, based upon which he decreed that the title to the twenty-acre city lot, and the hundred-acre tract in lot 244 was in petitioner, and that petitioner have judgment for $740 principal and $332.35 interest, which was declared to be a special lien on defendant's one-third interest in the Lipham farm. The defendant filed exceptions of law and fact, and the court overruled the exceptions of law and disapproved the ex-

ceptions of fact except two, and pendente lite exceptions were taken to this action of the court. A trial was had on the issues made by the two exceptions of fact approved by the court, which issues were submitted in the form of questions, and the jury in their special verdict found that the plaintiff have judgment for the principal sum of $300, with interest thereon from April 1, 1896, which judgment was to be a special lien on defendant's one-third interest in the Lipham farm. The defendant moved for a new trial, which was refused, and he excepts.

*Janes & Hutchens and Walter Matthews,* for plaintiff in error.
*E. S. Griffith and M. J. Head,* contra.

EVANS, P. J. (After stating the facts.)

1, 2. One exception of law related to the overruling of the demurrer, and another to the auditor's refusal, on oral motion, to dismiss the case for the reason that the cause of action as stated in the petition was barred by the statute of limitations. These exceptions were properly overruled. The substance of the demurrer was that no cause of action was alleged; that the petition was multifarious, in that separate and distinct causes of action were sought to be joined; and that the allegations of the petition were insufficient to put the defendant on notice of what he is charged. The demurrer failed to specify wherein the petition was indefinite, and is itself too general to call for greater particularity of statement. The cause of action alleged in the petition is the assertion by a principal of his right to recover, from his agent, money fraudulently procured and misapplied by the agent. The defrauded principal is not required to bring separate suits for each fraudulent transaction, but may join all in one suit. Nor does it appear on the face of the petition that the cause of action is barred by the statute of limitations. The petition was filed in May, 1900, and it was alleged that from time to time, beginning on December 22, 1894, the defendant fraudulently procured from the plaintiff divers sums of money for investment by the defendant for the benefit of the plaintiff, and that, instead of executing his trust, the defendant appropriated the money to his own use. The plaintiff's cause of action had its origin in the agent's fraudulent conversion of the money intrusted to him for investment for his principal's benefit. The date of this conversion is not alleged; and if the defendant desired to have the precise time alleged, he

should have called for such allegations by special demurrer. The rule is that where it does not affirmatively appear upon the face of the petition that the cause of action is barred by the statute of limitations, this defense can not be made by general demurrer setting up that the action is barred by the statute, but is matter for plea. *Stringer* v. *Stringer,* 93 *Ga.* 320 (20 S. E. 242) ; *Coney* v. *Horne,* 93 *Ga.* 723 (20 S. E. 213) ; *Pass* v. *Pass,* 98 *Ga.* 791, 795 (25 S. E. 752).

3. The auditor reported as a finding of law "that U. G. Brock, the defendant, was the continuing and confidential agent of W. H. Wildey, the plaintiff, for the purpose of collecting, investing, and taking care of funds of Wildey, and that the statute of limitations did not begin to operate against Wildey until after February 8th, 1898, at which time Brock wrote Wildey a letter offering to settle matters between them." The exception to this finding is that the allegations of the petition make no such charge; that the finding is contrary to the evidence and without evidence to support it. This finding of the auditor is one of mixed law and fact, and its correctness can not be determined without a consideration of the evidence upon which it is based. Treating the exception filed thereto as purely one of law, it is an effort to raise anew the point involved in the motion to dismiss the plaintiff's case because barred by the statute of limitations, and is covered by the ruling on that motion. The finding of the auditor, however, was not a construction of the pleadings, but a statement of his conclusion from the evidence that the plaintiff's cause of action was not barred, for the reason that the agency was a continuing one, and that the statue only began to run from the time the agent offered to settle with the principal. Treated as an exception of fact, it is imperfect and incomplete, because the evidence necessary to be considered in passing thereon is neither incorporated therein, nor attached thereto as an exhibit, nor pointed out in the brief of evidence prepared and filed by the auditor. *First State Bank* v. *Avera,* 123 *Ga.* 598 (51 S. E. 665). Because of this imperfection the court very properly overruled this exception, and disapproved those exceptions of fact which were defective in the same particulars.

4. The court approved the exceptions to the 8th and 14th findings of fact by the auditor. The eighth finding was as follows:

"I find that J. R. Driver, A. I. Head, and U. G. Brock purchased from C. W. Lipham, administrator, certain property described in a deed dated Oct. 6th, 1897; recorded in book 'W' folio 115, Oct. 13th, 1904. I find from the evidence that U. G. Brock used a part of the money that he received from Wildey to pay for his one-third interest in the above-described land." The 14th finding was: "I rule that W. H. Wildey, the plaintiff, is entitled to a special lien against the one-third interest of U. G. Brock in the lands described in the deed from Lipham, administrator . . [described in the 8th finding], for the purpose of collecting and satisfying said debt of $1,072.35." In the submission of the issues formed thereon the court prepared certain questions which were answered by the jury, as follows: "Q. Was any money of the plaintiff, W. H. Wildey, invested in the Lipham farm by the defendant, U. G. Brock? Ans. Yes. Q. If any of W. H. Wildey's money was invested in Lipham farm, when was such money so invested, and how much of such money was so invested? Ans. Three hundred dollars, about April 1, 1896." In the motion for a new trial complaint is made as to the correctness of certain instructions of the court in submitting the case to the jury. One ground is that the court erred in charging, "If you find from the testimony ir. the case that six hundred dollars of the plaintiff's money was invested in this farm, or any part of such sum was so invested, then it would be your duty to so find by your verdict, naming the sum." The exception is that the charge is too general, and assumes that the defendant was the plaintiff's agent. The criticism is unmerited. The court in stating the case informed the jury that the plaintiff contended that of the money he sent defendant to invest for his benefit $600 was used by the defendant in the purchase of the Lipham farm on his own account, and that the defendant on the other hand denied that he used any of the plaintiff's money in buying this farm. The charge was adjusted to the pleading and evidence, and was not erroneous for the reason assigned.

The court charged, "In order for the plaintiff to recover in this case it is not necessary that his money should have gone into the farm at the time it was purchased jointly by the defendant with Head and Driver. If afterwards the property was sold to a third person and purchase-money notes were given for said land by such

third person, and the plaintiff purchased said notes, and while holding said purchase-money notes was induced by the defendant to part with the same and allowed the same to become converted by the representations of the defendant that the plaintiff would thereby obtain title or interest in such farm or any part thereof, and if he parted with said notes and the plaintiff believed and relied on such representations, then this would create such an equity in the plaintiff, Wildey, as would authorize you, and it would be your duty, to find the value of such note as was invested in the farm, provided, however, that you could not find that more than the sum of six hundred dollars was so invested." The complaint is, (1) that the court expressed an opinion that some of the plaintiff's money went into the purchase of the farm, and assumed that the defendant induced the plaintiff to part with certain notes, and allowed the same to be converted, by representations of the defendant that the plaintiff would thereby retain title or interest in such farm or some part thereof; (2) of the failure to charge other pertinent propositions of law in immediate connection; and (3) because the pleadings and evidence did not authorize the instructions given. The excerpt of the charge, construed in the light of the context, is not open to the criticism that the court expressed an opinion concerning the facts. Nor is a correct charge rendered erroneous by failure to charge in immediate connection therewith some other appropriate principle of law. The evidence and pleading warranted the instruction.

5. It is not erroneous in the trial of exceptions of fact to an auditor's report, where exceptions of law filed thereto have been overruled, to instruct the jury that the auditor's report is prima facie correct as to the facts which it finds, and the onus is on the party excepting to show that it is erroneous. *Arthur* v. *Commissioners of Gordon County,* 67 Ga. 220; *Poullain* v. *Poullain,* 76 Ga. 420 (4 S. E. 92); *Schmidt* v. *Mitchell,* 117 Ga. 6 (43 S. E. 371).

6. The letters from the defendant to the plaintiff related to the transactions involved in the issue before the jury, and were competent evidence; and the court properly overruled the objection of irrelevancy. The evidence amply supported the verdict, which has the approval of the trial judge; and the judgment denying a new trial is          *Affirmed.  All the Justices concur.*