CITY OF ATLANTA *v.* DeKALB COUNTY *et al.*

No. 14560.   JUNE 12, 1943.

254

256

258

*J. C. Savage, E. L. Sterne, J. C. Murphy,* and *Frank A. Hooper Jr.,* for plaintiff. *William D. Thomson, Sumter M. Kelley,* and *J. A. McCurdy Jr.,* for defendants.

BELL, Presiding Justice. The petition of the city as plaintiff was based upon the theory that under the terms of the agreement the city obtained from Druid Hills "the exclusive right" to flow water into and through the mains or pipes that would be laid by Druid Hills, with further exclusive right to tap them for the purpose of furnishing water to customers in the locality, and that since DeKalb County and its commissioner of roads and revenues purchased such mains or pipes with notice of the alleged contract, they acquired them subject to the rights of the city, and therefore should be enjoined from disconnecting them from the water system of the city, and from connecting them with the county's system, and from otherwise interfering with the rights of the city under such contract. In the brief filed in the city's behalf it is stated that the principal ground of the defendants' demurrer was that the contract gave to the city the right to cut off the water at any time, and therefore that it was without consideration and void. Counsel then

state several specific reasons why, as they contend, the agreement is a valid and binding contract, thus presenting the questions which the city as plaintiff in error seeks to have determined by this court. In our view of the case, a proper decision upon these questions will be controlling, and therefore we will lay aside all other questions. While the very matter for determination is whether there was a *contract,* we may for convenience use the term in this opinion, without regard to its precise legal meaning.

■ It is contended that the city granted a valuable right when it authorized Druid Hills to lay its water-mains in the roads of DeKalb County, a right which had not otherwise been granted to Druid Hills, a mere private corporation, but which had been conferred upon the City of Atlanta by a provision in its charter. The provision relied on was contained in the charter as granted by the General Assembly in 1874, as follows: "The Mayor and General Council, and all persons acting under their authority, shall have the right to use the ground or soil under any road, railroad, highway, street, lane, alley, or court, within the State, for the purpose of constructing, enlarging, or improving any of the work contemplated by this chapter, upon condition that they shall not permanently injure any such railroad, highway, street, lane, alley, or court, same to be restored to its original state, and all damage done thereto to be repaired." Attention is specifically called to the words "all persons acting under their authority," and it is insisted that the City of Atlanta was thereby given authority to convey or assign to Druid Hills the right to lay water-mains or pipes in the public roads of the county.

We can not agree that it was the purpose or intent by this section of the charter to confer upon the municipality any property right in the public roads or highways of other political subdivisions, such as might be transferred as consideration for a contract. It seems to us that the sole purpose of this provision was to grant charter authority to do the acts therein mentioned, so that if the city desired to perform them it would have the power, and if it did perform them it would not be subject to the imputation that it was engaging in acts that were ultra vires. Manifestly the General Assembly did not intend by this provision to grant a right or easement in the public roads of DeKalb or other county without any consideration or agreement of the latter with respect to such right;

and since the provision was intended merely to confer power and not to grant a property right, the city obtained nothing that it could bargain or sell to another. The phrase "all other persons acting under their authority," as properly construed, would include only such persons as the city might authorize to act for and on its behalf, as officers, agents, or contractors, and would not include a transferee. It follows that the consent of the city for Druid Hills to lay water-mains or pipes on the public roads of DeKalb County did not constitute anything in the nature of a property right, and did not supply anything as a monetary consideration, such as might within itself and without more make the agreement binding in whole or in part upon Druid Hills as the other contracting party. So, in the absence of something else that would amount to a consideration, the agreement of Druid Hills did not confer any right, exclusive or otherwise, upon the City of Atlanta.

■ It is further insisted, however, that under the terms of the agreement the city permitted Druid Hills to *connect* the mains laid by it with the existing mains of the City of Atlanta, and that the grant of this right alone constituted a valuable consideration. We have examined the contract carefully as to this matter, and find no language indicating an intention to grant any such permit or privilege, except for the purpose of enabling the city to flow water into .and through the mains that would be constructed by Druid Hills, if it elected to use the mains for this purpose; and the permission to make such connection, being thus a mere incidental matter, would count for nothing as a consideration independently of benefit resulting to Druid Hills through the use of such connection for the purpose indicated. It follows that unless the city became bound in some way to use the connection for the purpose of flowing water into the mains to be constructed by Druid Hills, the mere permission to make it would be valueless to Druid Hills and would not amount to a consideration. See *Schmidt* v. *Mitchell,* 117 *Ga.* 6 (4) (43 S. E. 371). The question whether there was any promise or obligation on the part of the city in this respect is a different matter, and will be considered in the next division of this opinion.

■ A consideration may exist in a mere promise or obligation; and it is insisted that the city became bound by this agreement to furnish water through these mains to individuals residing along same or accessible therefrom, and that in so contracting to fur-

nish water to residents, and in furnishing water to them, the city furnished a valuable and ample consideration to Druid Hills, so as to make the agreement valid and binding as against that party. It is suggested that the contract was in a sense made for the benefit of such third persons, and therefore that a consideration moving to them was a benefit and consideration to Druid Hills. We do not think the agreement will bear interpretation to the effect that the city promised therein to do anything toward supplying water through these mains, either to Druid Hills as the other contracting party, or to any person residing in the subdivision. The city was careful at every point to avoid assuming liability for any expense or act, and would not promise even to furnish water through the facilities thus to be placed at its disposal by Druid Hills. In paragraph 8 of the agreement, it was provided that the city through its Board of Water Commissioners "shall have the right to cut off water from said mains and service-pipes laid under this contract at any time, . . and shall not be liable for damages sustained by the party of the first part or any of its assigns by reason of having said water cut off by order of the Board of Water Commissioners;" and in paragraph 16 it was stipulated that the city "does not guarantee service through this line, and that the city shall not be liable for damage or claims for damage on account of a lack of sufficient water or for cutting the water off and discontinuing the service at any time for any cause whatever." The word "guarantee" as used in this paragraph is the equivalent of "promise," and so it was declared in positive terms that the city did not promise any service whatever through this line.

It is urged, however, that the provisions in paragraphs 8 and 16 should be construed in the light of the charter power to make rules and regulations respecting the introduction of water into any premises, and did not reserve or contemplate the right to discontinue service arbitrarily and without cause. Compare *Dodd* v. *Atlanta*, 154 *Ga.* 33 (7) (113 S. E. 166, 28 A. L. R. 465). Nor can we agree with counsel in this view or interpretation. In language about as plain and strong as could be used, it was declared in these paragraphs that the city would not be bound in any manner or to any extent; and since it had already been said in paragraph 6 that the agreement would be subject to all ordinances of the mayor and council, and all rules and regulations of the water department,

whether then in force or subsequently adopted, there would seem to be no reason to construe the specific reservations and disclaimers in paragraphs 8 and 16 otherwise than according to their natural import. The city, having expressly declined to bind itself, could not be heard to say that the opposite party was bound, unless there was some other consideration for the unilateral right claimed. *Morrow* v. *Southern Express Co.*, 101 *Ga.* 810 (28 S. E. 998); *Harrison* v. *Wilson Lumber Co.*, 119 *Ga.* 6 (3) (45 S. E. 730); *Cooley* v. *Moss*, 123 *Ga.* 707 (51 S. E. 625); *Simpson* v. *Sanders*, 130 *Ga.* 265 (60 S. E. 541); *Bankers Trust & Audit Co.* v. *Farmers & Merchants Bank*, 163 *Ga.* 352 (136 S. E. 143); *Snell* v. *Spalding Foundry Co.*, 180 *Ga.* 582 (3) (180 S. E. 218); *Pepsi-Cola Co.* v. *Wright*, 187 *Ga.* 723, 727 (2 S. E. 2d, 73).

■ Counsel for the city also rely upon the principle that although a promise may be a nudum pactum when made, because the promisee is not bound, it will become binding when he subsequently furnishes the consideration contemplated, by doing what he was expected to do. Compare *Brown* v. *Bowman*, 119 *Ga.* 153 (46 S. E. 410); *Hall* v. *Wingate*, 159 *Ga.* 630 (126 S. E. 796). It is true, of course, that the test of mutuality is to be applied as of the time the contract is to be enforced, and that an offer may contemplate acceptance merely by the doing of an act. The question then is whether Druid Hills, in laying these water-mains with the city's consent, made an offer to allow the city to use them for the purpose of furnishing water to the residents of the subdivision, and, if so, whether a mutually binding agreement was effectuated, and was made continuous, when the city did actually begin to use the mains for such purpose, and continued to do so. There might perhaps be some basis for affirmative answer to this question, except for the fact that it was expressly agreed that the city would have the right to cut off the water at any time, and reserved the right to use its own discretion over the continuance or discontinuance of water through these mains, and did not "guarantee service through this line." The parties thus determined in advance that no use by the city of the facilities afforded or offered by Druid Hills would have the effect of binding it to continue the service; and so the principle invoked has no application. Since the city refused to bind itself in any manner, and gave notice to this effect in the written agreement, neither was Druid Hills bound, nor did it become bound.

Compare *Atlanta Buggy Co.* v. *Hess Spring & Axle Co.,* 124 *Ga.* 338 (52 S. E. 613, 4 L. R. A. (N. S.) 431) ; *Federal Farm Mortgage Corporation* v. *Dixon,* 185 *Ga.* 466 (195 S. E. 414).

■ But it is contended further, that the city has obligated itself by contracts with customers to furnish them with water through these mains; and that since the customers and property owners had no knowledge of the alleged agreement between the city and Druid Hills, the same not having been recorded in DeKalb County, the city does not now have the right to discontinue such service to residents, even though it might care to do so. Allegations to this effect were made in the petition, and it was averred also that the city incurred considerable expense in tapping the mains for the purpose of furnishing water to such customers, together with great expense in enlarging and extending its own mains in order to supply water to the Druid Hills section. It is urged that since the city has thus become obligated by contracts to supply water to individual customers, and has incurred expense in providing for such service, it has acquired an easement to flow water through these mains, and that neither Druid Hills nor its assignees can legally take such right away from it.

The petition does not show the terms or conditions of any of the contracts which the city claims to have made with individual customers. Hence the allegation that the city has obligated itself by such contracts would seem to be a mere conclusion of law, with no sufficient allegation of fact to support it. Regardless of this, however, we do not think it would be material in this case whether the city has entered into binding contracts with customers, and we will not at this time determine any question as between the city and its customers. Since the agreement as made with Druid Hills was entirely void for want of consideration and mutuality, if the city did enter into binding contracts with customers on such foundation, it did so with full knowledge of the facts, and acted at its peril in so doing. So far as shown, Druid Hills did nothing to mislead it, and there is no basis for estoppel. In the circumstances, the city could not by dealing with the residents cure the fatal defect in its agreement with Druid Hills. *Mayor &c. of Gainesville* v. *Dunlap,* 147 *Ga.* 344 (3) (94 S. E. 247) ; *National Surety Co.* v. *Atlanta,* 151 *Ga.* 123 (106 S. E. 179) ; *Foster* v. *Mack,* 180 *Ga.* 418 (179 S. E. 97) ; *Exchange National Bank of Rome* v. *Alford,* 187 *Ga.* 60

(200 S. E. 128, 120 A. L. R. 761). The necessary conclusion is, that the alleged agreement was without consideration and wanting in mutuality, and therefore unenforceable.

The County of DeKalb claims authority to establish and maintain a water system, under an amendment to the constitution proposed in 1937, in reference to the particular county. Ga. L. 1937, p. 20. But in this case we need not consider the effect of this amendment, if any, upon the City of Atlanta, since it appears that the city has no valid contract with Druid Hills, and for this reason, regardless of other questions, is not entitled to the relief sought. The judge did not err in sustaining the general demurrer and in dismissing the suit.

*Judgment affirmed. All the Justices concur, except Jenkins, J., disqualified.*