1. If the relationship may be considered as confidential, the rule stated in Trustees of Jesse Parker Williams Hospital v. Nisbet, 191 Ga. 821 (6) (14 S.E.2d 64), as to the presumption of undue influence can not be applied here, because there is no evidence showing the mental capacity of the grantee or a disparity in the mental capacity of the grantor and grantee.
2. There is no evidence showing undue influence, and no circumstances which would authorize a conclusion that either of the deeds in question was executed as the result of undue influence exerted by the grantee or some one in her behalf upon the grantor; nor would the evidence authorize a verdict finding that the deeds were without consideration. Since the evidence demanded the verdict in favor of the defendant, the alleged error in the charge will not be considered. White v. Southern *Page 54 Railway Co., 123 Ga. 353 (4) (51 S.E. 411); Poole v. Atlanta Joint Stock Land Bank, 189 Ga. 59 (5 S.E.2d 368).
Judgment affirmed. All the Justices concur.
 No. 14153. MAY 26, 1942.
This is an action by two daughters and one grandchild of Mrs. Lucinda M. Armour, deceased, seeking cancellation of four deeds to realty, executed by the deceased to her daughter-in-law, Estelle Armour. The first trial resulted in a verdict and judgment for the plaintiffs, and on review this court reversed the judgment denying a new trial, because of error in the charge.192 Ga. 598 (15 S.E.2d 886). In the report of that decision the material portions of the pleadings are fully set forth, and need not be repeated here. The cancellations were sought on the grounds that the deeds were without consideration, and were obtained by undue influence exerted by the grantee upon the grantor. The second trial resulted in a verdict and judgment in favor of the defendant, and the plaintiffs excepted to the overruling of their motion for a new trial, consisting of the general grounds and of one special ground assigning error on a portion of the charge defining undue influence which would authorize cancellation, and instructing the jury that the undue influence necessary to authorize cancellation must have been exerted at the time the deeds were executed. This instruction was given to the jury as a part of the main charge, and was repeated twice on the request of the jury for additional charge on the subject of undue influence.
The record contains a brief of the evidence comprising fifty pages. The substance of the plaintiffs' evidence relating to undue influence is as follows: Estelle Armour was the daughter-in-law of Mrs. Lucinda M. Armour deceased. The only son of Estelle was a special favorite of his grandmother. Estelle was living with her son in a western State, and had been unemployed for some weeks when she returned to Georgia in 1932. At that time the deceased was living in the house of her son. Webb Armour. Shortly thereafter Estelle and the son moved into a house owned by the deceased, and the three lived together until Mrs. Lucinda's death in 1939. The first deed attacked was executed in 1934, when the grantor was eighty-seven years of age, and conveyed a portion of a *Page 55 
tract of land comprising over three hundred acres. Subsequent deeds conveyed the remainder of that tract, and the fourth or last deed attacked conveyed lands situated in Madison County, together with some personal property. All of the deeds except the last were duly recorded at or near the time of their execution. In evidence was a will executed by the deceased, which gave to Estelle all her property except one farm. Attorney Fortson testified, that he drafted a will for the deceased at the request of Estelle, but the will in evidence was not the one he drafted; that although this will was in substance the same, he was certain that it was not the same, because of the difference in the typewriting with which they had been drawn. The last deed under attack was executed only a few days after the date of the will, and it conveyed to the defendant the same property which was given to her under the will. The grantor was ninety-two years of age at her death, and the grantee was twenty-odd years younger. The grantor drew a Confederate pension of $30 per month, and this together with profits and rents received from her property was sufficient to support her. At one time she requested her daughter, Mrs. Settles, to receive her pension checks through the mail, cash them, and deliver the proceeds to her. This was done because for some reason she had not been receiving these checks at her home. The deceased sued her son Webb, seeking to collect an alleged claim against him; and the members of the family, being anxious to avoid the publicity of a trial in court, made strenuous efforts to secure a compromise settlement of that suit before trial. After considerable persuasion they succeeded in securing the consent of the son to settle; but the deceased refused to settle, rejecting the request of Estelle's son, her favorite, and agreed to settle only after the son had brought his mother from the hospital and she joined in the request to settle.
One witness for plaintiffs testified that she heard the deceased at one time say she did not think it right for one child to have all the property, but thought that all should share equally. Another testified that she heard the deceased tell Estelle that if she would operate the farms she could have all she made on them. All of the plaintiffs' testimony was to the effect that the mind of deceased was good for a person of her age, but some of them said that her mind appeared to weaken as her body weakened with age. There was testimony that at different times, dates not given, witnesses *Page 56 
saw the deceased, and she appeared to wish to do everything that she thought Estelle wanted her to do; and that when she would be telling something Estelle would interrupt her to make corrections, and that she would just cease to talk. All of the evidence showed that the defendant grantee was kind to the deceased at all times, and that apparently they got along in perfect peace. It was shown that when the husband of the deceased died approximately fifty years ago she settled with all the children for their interest as heirs in his estate, paying them in cash and receiving from each of them a deed conveying their entire interest in the estate. Some of these deeds were never recorded, and were found among her effects after her death. When Estelle desired to secure a loan on some of the land conveyed by one of the deeds here attacked, it was found that the record disclosed no conveyance of some of the children's interest to their mother. Thereupon quitclaims were sought, and were obtained from them. A letter from Mrs. Lucinda Armour to one of her sons, requesting that he execute a quitclaim deed, recited that he had previously conveyed his interest to her, but that the deed could not be found, and stated that she desired to clear the title in order that she might make a will. The evidence also showed that the defendant executed a security deed to some of the property involved, reciting that it was to secure a debt of $1000. She admitted that there was no debt, and said that the entire transaction was for the purpose of preventing her son from wasting or attempting to waste the property. There was no evidence that the defendant at any time deceived, persuaded, or even requested the grantor to execute any of the deeds here involved.
The defendant, by the testimony of a doctor who had attended the deceased a number of times, showed that the mind of the deceased was sound and strong for a person of her age. Numerous witnesses testified that they saw the deceased frequently, and that her mind was sound. The defendant testified, that she returned to Georgia at the request and upon the promise of the deceased that if she would do so and live with her she would give her the property; that the money consideration recited in the deeds was not paid, and that the consideration for each deed was love and affection; that when the deceased made her will she stated to the defendant that she was afraid some of them would attack it after she was gone; that within a few days she made the last deed here involved; and *Page 57 
that she (defendant) exerted no undue influence upon the deceased, but treated her kindly at all times.