## NORWOOD *v.* NORWOOD.

No. 17156.   JULY 12, 1950.

G. L. *Worthy* and *Ira Carlisle,* for plaintiff in error.

*Bell & Baker,* contra.

DUCKWORTH, Chief Justice. While, by general and special demurrers to the petition as amended and by the general and special grounds of the motion for new trial, there appears to be presented for decision a large number of questions of law, yet a decision sustaining the verdict against the general grounds of the motion for new trial will be decisive and controlling on all other questions except the rulings on the special demurrers, and our examination discloses no error in those rulings. If the evidence is held to have authorized the verdict of the jury upon both or either of the two grounds of attack upon the conveyances that were submitted to the jury, then the general grounds are without merit. Although cancellation was sought upon three grounds, to wit, (1) mental incapacity, (2) gross inadequacy of consideration and great mental disparity, and (3) undue influence, the judge expressly withdrew from the jury the question of mental incapacity, thus leaving only two grounds upon which relief was sought.

As to inadequacy of consideration, the evidence was sufficient to warrant the jury in finding that the consideration was grossly

inadequate. Although the value of the personal property conveyed is not shown by the evidence, its description shows that it has substantial value. It consists of an electric fan, a shotgun, and electric spray gun and transformer, and a note dated October 1, 1945, for $1290 payable $15 per month, to Clarence Norwood and signed by R. P. Poole and his wife, which was secured by a deed to a house and lot in the City of Cairo. The deed and note were for the purchase-money for the house and lot which Clarence Norwood sold to the grantors of the deed and the makers of the note, the house having been built by Clarence and finished when he came home from Cleveland, which was a little over a year before Clarence died. The maker of the note testified that he made a monthly payment on the note to Clarence about a month before he died, and Clarence told him to make the payments to his wife if he died.

While there is no testimony as to the exact value of this property, the jury could compare its value to the value of the claimed consideration of $2 and the promise to care for Clarence, and find "gross inadequacy of consideration." There was evidence that the petitioner gave Owen Norwood $208 in cash when Clarence was moved to the home of his parents, which was about two weeks before his death, and the jury could find that this more than took care of him. They could have discredited the testimony of the payment of $2 to Clarence, because, in his condition, he was unable to handle it and had no need whatsoever for it if his mother was to take care of him. There was no evidence to show the value of any services rendered by the mother in taking care of the deceased, but the overwhelming evidence shows that at the time of these conveyances all parties concerned knew that Clarence was seriously ill with an incurable ailment and that life could not last for any appreciable time. It was the right and duty of the jury to give consideration to such circumstances, and they were authorized to thereby conclude that the consideration was grossly inadequate.

But does the evidence show great mental disparity? Counsel for the defendant in contending that the evidence failed to show mental disparity cites and relies upon *Lunsford* v. *Armour*, 194 *Ga.* 53 (20 S. E. 2d, 594). There it was held that, in the absence of evidence showing the mentality of the parties, the jury

could not find great mental disparity. The grantor there was approximately 90 years old; the grantee, being 20 years younger, was approximately 70 years of age. The only evidence touching their mentality related to the grantor and showed that she was of sound mind, her mind weakening as she grew older. But just how weak was not shown, and assuming, as the law does, that the grantee was sane, it could not be found from the evidence that there was great mental disparity. Here we have the testimony of Dr. Griffin that the maker of the instrument sought to be canceled was "technically or medically insane," and that his disease rendered his mind unsound. Certainly it can be said that, where the maker was insane and the other party sane, there would be great mental disparity. While there was no testimony upon the trial of this case describing the mentality of the defendant, the law presumes her to be sane. *Huff* v. *Huff*, 41 *Ga.* 696, 705; *Holcombe* v. *State*, 5 *Ga. App.* 47 (62 S. E. 647); 20 Am. Jur. 207, 213, §§ 209, 215. The jury had opportunity to confirm this presumption of law by the appearance of the defendant and her husband as witnesses upon the trial, and, under the law, the jury was authorized to consider such evidence. *Mitchell* v. *State*, 110 *Ga.* 272 (34 S. E. 576). Although in *Lunsford* v. *Armour*, supra, the jury had opportunity to observe the grantee who appeared as a witness, as pointed out above, when treating that grantee as sane there was still no evidence from which the jury could have found great mental disparity. While, here, the difference in mental capacity was as wide as the distance from sanity to insanity. Therefore, the evidence was sufficient to authorize the verdict in favor of the plaintiff upon this ground. Code, § 37-710. This being a transaction between parent and child, the law requires such a conveyance to be closely scrutinized, and, upon proof of slight fraud, the conveyance might be canceled. *Head* v. *Holcombe*, 158 *Ga.* 94 (123 S. E. 107).

While the foregoing ruling would sustain the verdict against the general grounds of the motion for new trial, in view of the special grounds which relate to the evidence, it is thought appropriate that we rule upon whether or not the evidence authorized a finding that the conveyances resulted from undue influence as charged in the petition. On this phase of the case, it is very

significant that, while at home in the presence of his wife, the deceased told his father that he did not believe the accusation that she poisoned him and he did not want to be removed from his home, yet, within four or five days after he had been placed in the exclusive custody of the defendant and her husband, he told Dr. Griffin that his wife had poisoned him and had given him food that hurt him. This complete change of attitude was brought about in some manner, since it was not in harmony with the position previously taken in the presence of the defendant's husband and the petitioner. It was likewise significant that, immediately after the deceased was carried to the defendant's home, her husband and agent became so interested in acquiring possession of the property here involved that he threatened to attack the petitioner for refusing to give him possession, resorted to legal process in an attempt to secure possession, and conducted himself in such a manner in his efforts to gain possession that a court, after a hearing, judged it necessary to require him to make a peace bond; and, on the same day, this sick and dying husband of the petitioner conveyed all of his property to the defendant, thereby divesting his wife, who had cared for him through many months, of all interest in his property. The evidence was sufficient to authorize the jury to find that the instruments here sought to be canceled resulted from undue influence and to return a verdict in favor of the petitioner. See Code, § 37-703; *Stanley* v. *Stanley,* 179 *Ga.* 135 (175 S. E. 496).

This ruling, that the evidence which proves the material allegations of the petition is sufficient to support the verdict for the petitioner, is the equivalent of ruling that such allegations were enough to entitle the petitioner to the relief sought. It follows, therefore, that the court did not err in overruling the general demurrer. It also requires a ruling that each of the amended grounds of the motion, complaining of excerpts from the charge submitting those material issues to the jury upon the ground that there was no evidence to authorize such charges, is without merit.

For the reasons stated above, the court did not err in overruling the demurrers to the petition nor in overruling the motion for new trial as amended.

*Judgment affirmed. All the Justices concur.*